1  Adrienne Spiegel (CA Bar No. 330482)
   Public Justice
2  475 14th Street, Suite 610
   Oakland, CA 94612
3  Ph: (510) 622-8150
   Fax: (202) 232-7203
4  Email: aspiegel@publicjustice.net

5  *Listing continues on next page*

6
   Counsel for Plaintiff The Women's Student Union
7

8              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
9

10                                              | **PLAINTIFF OPPOSITION TO STATE OF**
                                                | **TEXAS'S MOTION TO INTERVENE AS**
11  THE WOMEN'S STUDENT UNION,                  | **DEFENDANT**

12          *Plaintiff,*                        Civil Action No. 3:21-cv-01626-EMC

13      v.                                      Judge: Honorable Edward M. Chen

14  U.S. DEPARTMENT OF EDUCATION,               Hearing: June 10, 2021, 1:30 PM (virtual)
                                                Courtroom 5, 17th Floor, 450 Golden Gate Ave.,
15          *Defendant.*                        San Francisco, CA 94102

16

17

18

19

20

21

22

23

24

25

26

27

28

*Plaintiff's Opposition to Texas's Motion to Intervene - 3:21-cv-01626-EMC*

Seth M. Galanter*
National Center for Youth Law
712 H Street NE, Suite 32020
Washington, DC 20002
Ph: (202) 868-4781
Fax: (510) 835-8099
Email: sgalanter@youthlaw.org

Adele P. Kimmel (CA Bar No. 126843)
Alexandra Z. Brodsky*
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
Ph: (202) 797-8600
Fax: (202) 232-7203
Email: akimmel@publicjustice.net
        abrodsky@publicjustice.net

Linda M. Correia*
Lauren A. Khouri*
Correia & Puth, PLLC
1400 16th Street NW, Suite 450
Washington DC 20036
Ph: (202) 602-6500
Fax: (202) 602-6501
Email: lcorreia@correiaputh.com
        lkhouri@correiaputh.com

*admitted pro hac vice

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 1

ARGUMENT ............................................................................................................................. 5

I.  TEXAS HAS NOT SHOWN THAT IT POSSESSES ARTICLE III STANDING, WHICH IS FATAL TO ITS MOTION TO INTERVENE ....................................................... 5

  A.  Texas Must Show Its Article III Standing To Intervene .................................................. 5

  B.  Texas Has Not Alleged Article III Standing .................................................................... 8

    1.  Texas's Threatened Injury of Litigation Costs Stemming from Supposedly Confusing Alternative Policies Is Insufficient to Establish Standing ...................... 9

    2.  Texas's Threatened Injury of Litigation Costs Stemming from Increased Liability Is Insufficient for Article III Standing ................................................... 12

II.  TEXAS IS NOT ENTITLED TO INTERVENE AS OF RIGHT ........................................ 13

  A.  Texas Has Not Established a Non-Speculative Protectable Interest Related to WSU's Claims ............................................................................................................... 14

  B.  Texas Will Have Other Opportunities to Defend Its Interests ....................................... 16

  C.  Texas Has Not Overcome The Presumption of Adequate Representation .................... 18

    1.  Texas Has Not Demonstrated the Defendant Does Not Share Its Objective ......... 18

    2.  Texas's Belief that the Defendant Will Make Different Legal Strategic Decisions is Insufficient to Demonstrate Inadequate Representation ................... 19

III.  THE COURT SHOULD DENY TEXAS PERMISSIVE INTERVENTION ...................... 21

  A.  Texas's Alleged Interests are Too Speculative and Attenuated from WSU's Claims .......................................................................................................................... 21

  B.  Texas Has Not Overcome the Presumption that the Defendant Will Represent its Interests. .................................................................................................................. 22

  C.  Texas's Intervention Will Cause Undue Delay and Prejudice ....................................... 23

CONCLUSION ...................................................................................................................... 24

1

**TABLE OF AUTHORITIES**

2

**CASES**

*Apple Inc. v. Iancu*, No. 20-06128, 2021 WL 411157 (N.D. Cal. Feb. 5, 2021)............. 23, 23-24

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003)........................................... 15, 18

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) .................................... 5

*Beyer v. Symantec Corp.*,
  No. 18-CV-02006-EMC, 2019 WL 935135 (N.D. Cal. Feb. 26, 2019) .................................. 11

*Cahen v. Toyota Motor Corp.*, 717 F. App'x 720 (9th Cir. 2017)..................................... 11

*California v. HHS*, 330 F.R.D. 248 (N.D. Cal. 2019)............................................... 16

*Carroll v. Wells Fargo*, No. 15-02321, 2016 WL 3951650 (N. D. Cal. July 22, 2016).............. 23

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ................................................. 8

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ................................. 8, 9, 10, 12

*Ctr. for Biological Diversity v. Jewell*,
  No. C 13-1749 PSG, 2013 WL 4127790 (N.D. Cal. Aug. 9, 2013) ..................................... 15

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020).............. 20

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) ............................................... 21

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ............................................. 3-4

*Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836 (9th Cir. 2011) ................. 13, 18

*Greene v. United States*, 996 F.2d 973 (9th Cir. 1993) ......................................... 14, 15

*Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.*, 627 F. App'x 662 (9th Cir. 2015)............. 14, 16

*In re Volkswagen "Clean Diesel" Mktg.*, 894 F.3d 1030 (9th Cir. 2018) ....................... 6, 13

*Med. Advocates for Healthy Air v. EPA*,
  No. 11-3515, 2011 WL 4834464 (N.D. Cal. Oct. 12, 2011) ....................................... 14, 22

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986).............................................. 3

*MHC Fin. Ltd. P'ship v. City of San Rafael*,
  No. C-00-3785 VRW, 2006 WL 8431310 (N.D. Cal. Jan. 27, 2006) .................................. 6-7

*Michigan v. EPA*, 576 U.S. 743 (2015) ........................................................... 20

*Mishewal Wappo Tribe of Alexander Valley v. Salazar*,
  No. 5:09-CV-02502 EJD, 2012 WL 4717814 (N.D. Cal. Sept. 28, 2012),
  *aff'd*, 534 F. App'x 665 (9th Cir. 2013)...................................................... 21, 22

*Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017) ............................... 8, 11

*Munns v. Kerry*, 782 F.3d 402 (9th Cir. 2015) ................................................... 8, 10

*New York v. U.S. Dep't of Educ.*,
  No. 20-CV-4260 (JGK), 2020 WL 3962110 (S.D.N.Y. July 10, 2020)................................... 20

*Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647 (N.D. Cal. 2004).............................. 16

*Nw. Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996),
  *as amended on denial of reh'g* (May 30, 1996) ............................................................ 20

*Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956 (9th Cir. 2015) (en banc) .............. 7

*Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947 (9th Cir. 2009) ........................................ 21

*Perry v. Schwarzenegger*, 630 F.3d 898 (9th Cir. 2011) ................................................... 7, 15

*Pesticide Action Network N. Am. v. EPA,*
  No. C 08-01814 MHP, 2008 WL 11404954 (N.D. Cal. July 8, 2008) ................................ 13

*Plummer v. Univ. of Houston*, 860 F.3d 767 (5th Cir. 2017) .................................................. 11

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006) ................................................................ 5

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) ...................................................................... 20

*Sierra Club v. EPA*, No. 13-2809, 2013 WL 5568253 (N.D. Cal. Oct. 9, 2013) ........................ 23

*Southwest Ctr. for Biological Diversity v. Berg,* 268 F.3d 810 (9th Cir. 2001) ........................ 13

*Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1977) .................. 21, 22, 22- 23

*SurvJustice Inc. v. DeVos,*
  No. 18-CV-00535-JSC, 2019 WL 1427447 (N.D. Cal. Mar. 29, 2019) ........................... 5, 13

*Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645 (2017) ...................................... 5

*UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408 (N.D. Cal. 2004) ........................ 23

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004) ................................ 14, 15, 16

*United States v. Bayer Cropscience LP,*
  No. 2:15-CV-13331, 2018 WL 3553413 (S.D. W. Va. July 24, 2018) .............................. 7

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ................................ 16, 18, 20

*United States v. City of Pittsburg,* 467 F. Supp. 1080 (N.D. Cal. 1979),
  *aff'd,* 661 F.2d 783 (9th Cir. 1981) ........................................................................... 16

*United States v. Dunifer*, 997 F. Supp. 1235 (N.D. Cal. 1998),
  *aff'd,* 219 F.3d 1004 (9th Cir. 2000) .......................................................................... 6

*United States v. Sprint Comm., Inc.,* 855 F.3d 985 (9th Cir. 2017) .................................. 14, 15

*Valley View Health Care, Inc. v. Chapman,*
  No. 1:13-CV-0036-LJO-BAM, 2013 WL 4541602 (E.D. Cal. Aug. 27, 2013) ...................... 19

*Victim Rights Law Center v. Rosenfelt*, 988 F.3d 556 (1st Cir. 2021) ............................ 6, 18, 20

*Walsh v. Hodge,* 975 F.3d 475 (5th Cir. 2020)
  *cert. denied*, No. 20-1128, 2021 WL 1072326 (U.S. Mar. 22, 2021) .............................. 11

*Wayne Land & Min. Grp., LLC v. Delaware River Basin Comm'n,*
  959 F.3d 569 (3d Cir. 2020) .................................................................................... 6

*YCS Invs. v. United States Fish & Wildlife Serv.*, 833 F. App'x 712 (9th Cir. 2021) ................. 10

## CONSTITUTION AND STATUTES

U.S. Const., Art. III ............................................................. 5, 6, 7, 8, 12, 13, 21

5 U.S.C. § 551 *et seq*. (Administrative Procedure Act) ................................ 6, 17, 20

5 U.S.C. § 553 ............................................................................. 17

5 U.S.C. § 706 ............................................................................. 17

20 U.S.C. § 1682 ....................................................................... 17, 18

20 U.S.C. § 1683 ........................................................................... 18

Tex. Educ. Code § 51.251(5) .................................................................. 9

## FEDERAL RULES

Fed. R. Civ. P. 24(a) ............................................................... 13, 15, 16

Fed. R. Civ. P. 24(a)(2) .................................................................... 13

Fed. R. Civ. P. 24(b)(1)(B) ................................................................. 21

Fed. R. Civ. P. 24(b)(3) ............................................................... 21, 23

## FEDERAL REGULATIONS AND EXECUTIVE ORDERS

Exec. Order No. 14021, 86 Fed. Reg. 13,803 (Mar. 8, 2021) .............................. 4, 19

29 C.F.R. § 1604.11(a) (1985) ............................................................... 3

29 C.F.R. § 1604.11(d) ...................................................................... 4

34 C.F.R. § 100.8 ......................................................................... 17

34 C.F.R. § 100.8(c) ...................................................................... 17

34 C.F.R. § 106 ............................................................................ 1

34 C.F.R. § 106.30(a) ...................................................................... 2

34 C.F.R. § 106.30(a)(2) .................................................................... 1

34 C.F.R. § 106.44(a) ...................................................................... 2

34 C.F.R. § 106.71 ........................................................................ 17

## U.S. DEPARTMENT OF EDUCATION DOCUMENTS

*Racial Incidents and Harassment Against Students at Educational Institutions; Investigative Guidance*, 59 Fed. Reg. 11,448 (Mar. 10, 1994) ............................................ 3

*Sexual Harassment Guidance*, 62 Fed. Reg. 12,034 (Mar. 13, 1997) ............................ 3

U.S. Dep't. of Educ., *Dear Colleague Letter on Prohibited Disability Harassment* (July 25, 2000), https://www2.ed.gov/about/offices/list/ocr/docs/disabharassltr.html .............. 3

*Revised Sexual Harassment Guidance*, 66 Fed. Reg. 5,512 (Jan. 19, 2001) .................... 3

U.S. Dep't. of Educ., *Dear Colleague Letter: Harassment and Bullying* (Oct. 26, 2010), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf ................... 3

U.S. Dep't. of Educ., *Dear Colleague Letter on Sexual Violence* (Apr. 4, 2011),
    https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf.............................. 2, 3

U.S. Dep't. of Educ., *Questions and Answers on Title IX and Sexual Violence* (2014),
    https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf................................. 2, 3

*Nondiscrimination on the Basis of Sex in Education Programs or Activities
    Receiving Federal Financial Assistance,* 85 Fed. Reg. 30,026 (May 19, 2020) ................. 1, 12

Suzanne B. Goldberg, U.S. Dep't. of Educ., *Letter to Students, Educators, and other
    Stakeholders re Executive Order 14021* (Apr. 6, 2021),
    https://www2.ed.gov/about/offices/list/ocr/correspondence/stakeholders/
    20210406-titleix-eo-14021.pdf. ........................................................................................... 4-5

**OTHER AUTHORITIES**

Brief of Plaintiffs (including Texas) *Franciscan Alliance, Inc. v. Azar*, No. 7:16-CV-
    00108-O, Dkt. No. 165 (N.D. Tex. August 12, 2019*),*
    https://www.courtlistener.com/recap/gov.uscourts.txnd.278367/gov.uscourts.txnd.2783
    67.165.0.pdf. ....................................................................................................................... 7, 8

Brief of Oregon, *California v. HHS,*
    4:17-CV-05783-HSG, 2019 WL 11729816 (N.D. Cal. Jan. 7, 2019) ......................................16

Samuel R. Bagenstos, *What Went Wrong With Title IX?*, Washington Monthly (Sept./Oct.
    2015), https://washingtonmonthly.com/magazine/septoct-2015/what-went-wrong-with-
    title-ix/.................................................................................................................................10

Erin E. Buzuvis, *Title IX and Procedural Fairness: Why Disciplined-Student Litigation
    Does Not Undermine the Role of Title IX in Campus Sexual Assault*, 78 Mont. L. Rev.
    71 (2017).............................................................................................................................17

Jonathan Taylor, *Milestone: 600+ Title IX/Due Process Lawsuits in Behalf of Accused
    Students*, Title IX for All (Apr. 1, 2020), https://www.titleixforall.com/milestone-600-
    title-ix-due-process-lawsuits-in-behalf-of-accused-students ...................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

The State of Texas did not like the Obama Administration's policies on Title IX. Unfortunately for the merits of its motion to intervene, that is not what the Women's Student Union's ("WSU's") lawsuit is about. Instead, WSU challenges four provisions of Title IX regulations promulgated last summer by then Secretary of Education Elisabeth DeVos. Insisting it is entitled to intervene to defend the 2020 Regulations, Texas raises vague but fiery criticism of past positions by the Defendant, the U.S. Department of Education ("the Department"), while broadly praising the new rules as a whole. But it never concretely explains how the state would suffer if WSU succeeded and the Court struck down the specific parts of the 2020 Regulations at issue in this case. Indeed, Texas never even acknowledges three of the challenged provisions, and mentions the fourth only in passing. As a result, Texas has failed to carry its burden to establish it is entitled to either mandatory or permissive intervention. The Court should deny its motion.

## FACTUAL BACKGROUND

In 2020, former Secretary of Education Elisabeth DeVos promulgated new Title IX regulations (the "2020 Regulations") concerning how the Department would judge schools' responses to sexual harassment in evaluating federal administrative civil rights complaints. *See Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance,* 85 Fed. Reg. 30,026 (May 19, 2020) (codified at various places in 34 C.F.R. § 106). These regulations are massive, and massively complicated; the preamble alone is more than 500 pages in the small print used in the Federal Register. *See id.* at 30,026-30,572. Only four provisions, however, are at issue in this suit. *See* Compl., ECF 1, at 11-16. Specifically, for purposes of evaluating federal administrative civil rights complaints, the 2020 Regulations:

- Narrowed the definition of sexual harassment, requiring schools to address only harassment that is "severe" *and "*pervasive," 34 C.F.R. § 106.30(a)(2);

- Excused schools from addressing sexual harassment that occurs outside its educational programs or activities, even if that harassment causes a hostile environment within an educational program or activity, *id.* § 106.44(a);

- Adopted an actual knowledge standard for sexual harassment, under which schools are not responsible for their failures to address harassment they should have known about if they did not actually know about it, *id.* §§ 106.30(a), 106.44(a); and

- Adopted a deliberate indifference standard, under which a school fulfills its obligations under Title IX so long as it does not act "clearly unreasonabl[y]," and under which a school is only required to address the impact of sexual harassment on its target, not on any third parties, *id.* § 106.44(a).

The 2020 Regulations constitute a dramatic departure from the Department's long-standing interpretation of Title IX in evaluating federal administrative sexual harassment complaints, as well as its continued standards for race and disability-based harassment. In its brief, Texas rails against two Title IX policy guidances released by the Department's Office for Civil Rights ("OCR") during the Obama Administration. *See* Mem. P. & A. Supp. Intervenor-Def. Texas's Mot. to Intervene as Def., ECF 19-1 at 8-9[1], 14-15.[2] In truth, those documents reiterated views OCR had long held and repeatedly publicized since 1994 through a series of policy guidances concerning schools' responsibilities to address harassment based on sex, race, and disability. Compl. ¶¶ 25-32.

These documents expressed OCR's long-standing views, over both Democratic and Republican administrations, about what kinds of harassment schools must address and the standards the Department will use in evaluating federal administrative civil rights complaints brought by harassment victims under Title IX, Title VI of the Civil Rights Act of 1964, Section

---

[1] Because ECF 19-1 includes multiple documents, page numbers correspond to the ECF-marked pagination at the top of the page.

[2] *See* U.S. Dep't. of Educ., *Questions and Answers on Title IX and Sexual Violence* (2014), https://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf [hereinafter "2014 Q&A"]; U.S. Dep't. of Educ., *Dear Colleague Letter on Sexual Violence 3* (Apr. 4, 2011), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf [hereinafter "2011 Dear Colleague Letter"].

504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act of 1990. *Id.* For example, these policy guidances consistently explained OCR's belief that schools must address harassment that is "severe" *or "*pervasive." Compl. ¶¶ 39-41.[3] The policy guidances also advised regulated entities that OCR expected a school to take reasonable, prompt, and effective action in response to harassment about which it knew or should have known. Compl. ¶¶ 55, 57.[4]

OCR's positions mirrored standards developed in the 1980s for harassment complaints brought under Title VII of the Civil Rights Act of 1964, which prohibits discrimination in employment. Its definition of sexual harassment, for one, came directly from the Supreme Court and the Equal Employment Opportunity Commission ("EEOC"). *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67-68 (1986) (holding that "the gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome,'" and that employers must address sexual harassment that is "severe or pervasive" (citing EEOC's regulations at 29 C.F.R. § 1604.11(a) (1985))). OCR's use of a constructive knowledge standard in evaluating federal administrative civil rights complaints, and its expectation that schools take prompt and effective action, also reflected Title VII case law and EEOC regulations. *See, e.g.*, *Faragher v. City of Boca Raton*, 524

---

[3] *See* U.S. Dep't. of Educ., *Dear Colleague Letter: Harassment and Bullying 2* (Oct. 26, 2010), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf [hereinafter "2010 Bullying Guidance"]; U.S. Dep't. of Educ., *Dear Colleague Letter on Prohibited Disability Harassment* (July 25, 2000), https://www2.ed.gov/about/offices/list/ocr/docs/disabharassltr.html [hereinafter "2000 Disability Harassment Guidance")]; *Sexual Harassment Guidance*, 62 Fed. Reg. 12,034, 12,034, 12,041 (Mar. 13, 1997); *Racial Incidents and Harassment Against Students at Educational Institutions; Investigative Guidance*, 59 Fed. Reg. 11,448, 11,449 (Mar. 10, 1994) [hereinafter "1994 Racial Harassment Guidance"]; *see also* 2011 Dear Colleague Letter at 3 (explaining the difference between permissible and impermissible sexual conduct it whether it was "unwelcome"); *Revised Sexual Harassment Guidance*, 66 Fed. Reg. 5,512-01 (Jan. 19, 2001), https://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf (same).

[4] *See* 2014 Q&A at 3; 2011 Dear Colleague Letter at 4; 2010 Bullying Guidance at 2-3; Revised Sexual Harassment Guidance at iii, 9-14; 2000 Disability Harassment Guidance; Sexual Harassment Guidance at 12,042-43; 1994 Racial Harassment Guidance at 11,450.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

U.S. 775, 799, 807 (1998) (explaining employer may be liable for negligent response to coworker harassment or failing to "exercise[] reasonable care to prevent and correct promptly any sexually harassing behavior" by supervisor); 29 C.F.R. § 1604.11(d) (explaining an employer could be liable under Title VII for sexual harassment where it "knows or should have known of [sexual harassment], unless it can show that it took immediate and appropriate corrective action").

On March 8, 2021, President Biden signed an Executive Order on Guaranteeing an Educational Environment Free from Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity. Exec. Order No. 14021, 86 Fed. Reg. 13,803 (Mar. 8, 2021). The Executive Order announced that "[i]t is the policy of [President Biden's] Administration that all students should be guaranteed an educational environment free from discrimination on the basis of sex, including discrimination in the form of sexual harassment, which encompasses sexual violence, and including discrimination on the basis of sexual orientation or gender identity." *Id*. The Executive Order instructed the Secretary of Education to "review all existing regulations, orders, guidance documents, policies, and any other similar agency actions (collectively, agency actions) that are or may be inconsistent with the [announced] policy." *Id*. Among the agency actions that require review, the Executive Order specified, are the 2020 Regulations. *Id*. The Executive Order did not instruct the Defendant to rescind or stop enforcing the 2020 Regulations, and did not mention the provisions at issue in WSU's lawsuit. *See id*.

On April 6, 2021, Suzanne Goldberg, the Education Department's Acting Assistant Secretary for Civil Rights, released a letter explaining the process by which the Department would undertake its review. Suzanne B. Goldberg, U.S. Dep't. of Educ., *Letter to Students, Educators, and other Stakeholders re Executive Order 14021* (Apr. 6, 2021), https://www2.ed.gov/about/offices/list/ocr/correspondence/stakeholders/20210406-titleix-eo-14021.pdf. In that letter, Goldberg indicated that the Department anticipates that – after soliciting

public comments – it will "publish[] in the Federal Register a notice of proposed rulemaking to amend the Department's Title IX regulations." *Id*. at 2-3. The letter does not indicate the Department intends to change any of the provisions WSU challenges, does not establish a timeline by when the Department will complete its review or proposed rule, and does not suggest that the Department will not enforce the current regulations in the interim. *See id*.

## ARGUMENT

**I. Texas Has Not Shown That It Possesses Article III Standing, Which Is Fatal To Its Motion To Intervene**

### A. Texas Must Show Its Article III Standing To Intervene

"Standing to sue *or defend* is an aspect of the case-or-controversy requirement." *Arizonans for Official English v. Arizona,* 520 U.S. 43, 64 (1997) (emphasis added). The Ninth Circuit has not decided whether Article III itself *always* requires an intervenor to establish constitutional standing. *See Prete v. Bradbury*, 438 F.3d 949, 955 n.8 (9th Cir. 2006) (noting but declining to address circuit split on the issue). And there is no need for this Court to resolve that broad question, as there are three reasons why *in this case* Article III requires Texas to show that it has constitutional standing to intervene.

*First*, Texas asks the court to exercise its authority to grant Texas relief, including to "assess costs against Plaintiff, and award Defendant all other relief the Court deems appropriate." ECF 19-1 at 37. "[A]t the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017); *see SurvJustice Inc. v. DeVos*, No. 18-CV-00535-JSC, 2019 WL 1427447, at *4 (N.D. Cal. Mar. 29, 2019) ("Because [putative intervenor] Equality Advocates proposed complaint seeks additional claims for relief beyond what Plaintiffs' request, Equality Advocates must establish Article III standing."). This is because when an applicant seeks

different relief, whether as plaintiff or defendant, it cannot rely on the existing parties' standing. *See In re Volkswagen "Clean Diesel" Mktg.,* 894 F.3d 1030, 1043-44 (9th Cir. 2018) (applying *Town of Chester* to deny motion to intervene for lack of standing when movant sought relief against plaintiff); *see also Wayne Land & Min. Grp., LLC v. Delaware River Basin Comm'n*, 959 F.3d 569, 575 n.6 (3d Cir. 2020) (under *Town of Chester,* intervenor must demonstrate Article III standing even if remedies sought are not "entirely different" or "categorically distinct" from the remedies sought by another party).

  *Second*, Texas must establish its standing because it seeks to raise an affirmative defense (that the relief Plaintiff seeks would violate, inter alia, the First, Fifth, and Fourteenth Amendments, ECF 19-1 at 37) that the Department has not and likely will not.[5] Assuming, *arguendo*, that a rationale not relied on by the government during rulemaking could ever be an appropriate defense to that regulation in an Administrative Procedure Act ("APA") action, *but see infra* page 20, raising an affirmative defense that requires "the litigation of issues not encompassed in the plaintiff's case-in-chief," puts a defendant "in a similar situation on those issues to a plaintiff who is invoking the jurisdiction of the court" and thus the defendant must show Article III standing. *United States v. Dunifer*, 997 F. Supp. 1235, 1239-40 (N.D. Cal. 1998), *aff'd on other grounds,* 219 F.3d 1004 (9th Cir. 2000); *see also MHC Fin. Ltd. P'ship v. City of San Rafael*, No. C-00-3785 VRW, 2006 WL 8431310, at *10 (N.D. Cal. Jan. 27, 2006) ("Because the City waived

---

[5] In its briefing, Texas asserts that the Department will not make its favored arguments. ECF 19-1 at 18, 20. Although it provides no support for that proposition, it could have pointed to *Victim Rights Law Center v. Rosenfelt*, 988 F.3d 556, 560 (1st Cir. 2021), where the Court described "the government's strategic and policy choice not to argue that the First Amendment requires the use of a standard for actionable sexual harassment" adopted in the 2020 Title IX Regulations. In addition, the Department's answers in other cases challenging the 2020 Regulations do not press the affirmative defense identified in Texas's Answer. *See ECF 135, Commonwealth of Pennsylvania v. DeVos*, 1:20-cv-01468-CJN (D.D.C. Jan. 19, 2021); ECF 86, *New York v. U.S. Dep't of Educ.*, No. 20-CV-4260 (JGK) (S.D.N.Y. Sept. 3, 2020).

its statute of limitations defense and because an intervenor 'cannot enlarge the issues tendered by or arising out of plaintiff's bill,' the [intervenor defendant] does not have standing to raise the statute of limitations defense." (citations omitted)).

*And third*, Texas must establish its standing because it seeks intervention, at least in part, to preserve its right to appeal if the Department loses this case and elects to accept the Court's ruling. ECF 19-1 at 17. It is settled that Texas will need to show Article III standing in order to appeal in that circumstance. *See Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 963 (9th Cir. 2015) (en banc). Denying intervention to Texas for lack of standing when it will need that standing to meet its own purported goals is not error. *Cf. Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011) (rejecting motion to intervene as defendant when its "only expressed interest in the litigation – ensuring appellate review of Plaintiffs' constitutional claims – was one that they could not fulfill because they would lack standing to appeal the judgment in Plaintiffs' favor").

This Article III standing requirement applies to Texas' request for permissive intervention, in addition to intervention as of right. As Texas itself has urged in other litigation, the Supreme Court's decision in "*Town of Chester* requires that intervenors – whether permissive or of right – have standing if they seek relief different from that sought by any other party in the case with standing." Brief of Plaintiffs (including Texas), *Franciscan Alliance, Inc. v. Azar*, No. 7:16-CV-00108-O (N.D. Tex.), Dkt. No. 165 at 1 (August 12, 2019), https://www.courtlistener.com/recap/gov.uscourts.txnd.278367/gov.uscourts.txnd.278367.165.0.pdf. Texas noted that "several post-*Town of Chester* courts have recognized that the requirement of Article III standing in *Town of Chester* 'extends to a permissive intervenor.'" *Id*. at 2 (quoting *United States v. Bayer Cropscience LP*, No. 2:15-CV-13331, 2018 WL 3553413, at *9 (S.D. W. Va. July 24, 2018)). And it explained that a district court that ruled the other way "overlooked

that no matter how much 'discretion' courts have under *Rule 24*, that Rule cannot abrogate *Article III*." *Id.* Because, as we show in Part B immediately below, Texas has not alleged Article III standing, its motion to intervene must be denied.

### B.  Texas Has Not Alleged Article III Standing

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted). Where a party's standing rests on future harm, the "threatened injury must be *certainly impending* to constitute injury in fact." *Id.* "[A]llegations of *possible* future injury are not sufficient." *Id.* (internal quotation marks omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (noting an alleged "threat of injury must be both 'real and immediate,' not 'conjectural' or hypothetical'"). Crucially for this case, a "theory of standing . . . [that] relies on a highly attenuated chain of possibilities[] does not satisfy the requirement that the threatened injury must be certainly impending." *Clapper*, 568 U.S. at 410; *see also Munns v. Kerry*, 782 F.3d 402, 410-11 (9th Cir. 2015) (holding plaintiff lacked standing where potential injury would rely on a chain of uncertain events). That is especially so when the threatened injury is "contingent upon the decisions of many independent actors in the causal chain." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 654 (9th Cir. 2017) (citing *Clapper*, 568 U.S. at 413).

This is exactly such a circumstance. Texas says WSU's suit would end up causing it financial injuries. ECF 19-1 at 14-15. But its own account makes clear those costs would only arrive at the end of highly speculative "chains of possibilities," each dependent on third parties and Texas itself making certain discretionary decisions.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

   1.  *Texas's Threatened Injury of Litigation Costs Stemming from Supposedly Confusing Alternative Policies Is Insufficient to Establish Standing*

Texas predicts that that "[i]nvalidating the [2020 Regulations] would create uncertainty," which would in turn cause Texas schools (which it purports to represent for purposes of standing, but apparently disclaims the ability to control) to adopt inappropriately broad sexual harassment policies, which would in turn spur expensive litigation. *Id*. For this first alleged injury to occur, a precise and highly attenuated series of events would have to unfold. Because the predicted financial cost at the end of this chain reaction is not "certainly impending" or "fairly traceable" to the challenged provisions of the 2020 Regulations, it is not an injury in fact. *Clapper*, 568 U.S. at 409.

*Step 1 (Mass Confusion)*: Texas's warning that the success of WSU's lawsuit would usher in chaotic uncertainty strains credulity. Prior to the 2020 Regulations, OCR retained consistent definitions and standards for evaluating federal administrative sexual harassment complaints for decades. *See supra* pages 2-3. They were the same definitions and standards OCR has used for all other forms of harassment since 1994, and the same standards the EEOC and courts have applied to harassment claims under Title VII since the 1980s. *See supra* pages 3-4. Texas state education law, too, defines sexual harassment as "unwelcome, sex-based verbal or physical conduct that . . . is sufficiently severe, persistent, *or* pervasive." Tex. Educ. Code § 51.251(5) (2020) (emphasis added). Texas and its schools, then, have decades of experience addressing harassment against students and employees under those standards – and continue to do so today. If OCR were to readopt its past interpretations of Title IX related to the challenged provisions, Texas could certainly handle it.

*Step 2 (Overbroad Policies)*: Texas then predicts that, if OCR returned to those previous standards, the state's own schools would adopt unnecessarily bad policies. That outcome is not

only speculative and attenuated from the challenged regulations, but seemingly within Texas's control to avoid. *See* ECF 19-1 at 13 (noting Texas's regulatory and administrative power over its schools). If Texas fears that, without the 2020 Regulations, its schools will "[i]n an abundance of caution" adopt over-broad policies, ECF 19-1 at 15, the state can advise them not to do so. But it has failed to provide evidence or even plausible allegations to demonstrate that the success of this lawsuit, and the striking of the particular provisions at issue here, will force schools to take such steps. *Cf. Clapper*, 568 U.S. at 417 (holding plaintiffs could not establish standing based on injuries resulting from their own decisions motivated by fear of speculative future government action); *Munns*, 782 F.3d at 410-11 (same); *see also YCS Invs. v. United States Fish & Wildlife Serv.*, 833 F. App'x 712, 714 (9th Cir. 2021) (noting plaintiff that "has itself created the [injurious] circumstance alleged . . . lacks a cognizable injury"). After all, although Texas gestures broadly at unspecified objections to previous Title IX guidance, it never actually argues that OCR's previous positions on any of the four items in question here (or on any previous positions concerning Title IX policy at all) required schools to violate another legal commitment.[6]

*Step 3 (Expensive Litigation)*: The threat of resultant litigation is particularly speculative and untethered to the relevant portions of the 2020 Regulations. Texas alleges, without citation, that "[h]undreds of lawsuits have been filed since the [2011] Dear Colleague Letter was issued – a sizeable number of which academic institutions lost or settled." ECF 19-1 at 15.[7] The state does

---

[6] For an explanation of the lack of causative relationship between Obama-era Title IX policy guidance and subsequent allegation of unfair disciplinary procedures, see Samuel R. Bagenstos, *What Went Wrong With Title IX?*, Washington Monthly (Sept./Oct. 2015), https://washingtonmonthly.com/magazine/septoct-2015/what-went-wrong-with-title-ix/.

[7] In a largely-identical brief filed in another challenge to the 2020 Regulations, Texas cites for this assertion an article by an advocacy group for people accused of sexual harassment, which notes 600 "Title IX/Due Process" lawsuits filed by students and employees who feel they were unfairly disciplined by their schools. Mem. in Support of Mot. to Intervene, ECF 130-1, *Commonwealth of Pennsylvania v. DeVos*, No. 20-cv-01468-CJN, at 9 (Jan. 19, 2021) (citing

not, however, identify any lawsuits filed against one of its schools, explain how those lawsuits related to OCR's previous position on any of the provisions WSU challenges, or quantify the state's resultant costs. As a result, Texas is left with no more than a conclusory assertion of possible future economic loss at the hands of independent third parties, which is plainly insufficient to establish an injury in fact or causation. *See Missouri*, 847 F.3d at 654 (holding plaintiffs lacked standing because alleged economic impact was "speculative" and "remote"); *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 723-24 (9th Cir. 2017) (holding plaintiffs could not establish standing based on allegations of economic harm that "are conclusory and unsupported by any facts"); *Beyer v. Symantec Corp.*, No. 18-CV-02006-EMC, 2019 WL 935135, at *4 (N.D. Cal. Feb. 26, 2019) (Chen, J.) (same).

True, in recent years some students and professors sanctioned for sexual harassment have filed suit against Texas universities and university officials, alleging deficient disciplinary procedures. *See, e.g.*, *Walsh v. Hodge*, 975 F.3d 475, 481-88 (5th Cir. 2020) (denying on qualified immunity grounds due process claim brought by Texas professor fired for sexual harassment), *cert. denied*, No. 20-1128, 2021 WL 1072326 (U.S. Mar. 22, 2021); *Plummer v. Univ. of Houston*, 860 F.3d 767, 773-77 (5th Cir. 2017) (denying due process claims by Texas students disciplined for sexual harassment). But Texas has not so much as attempted to demonstrate how this Court's decision to strike down the relevant parts of the 2020 Regulations would cause increased litigation. Any potential relationship seems particularly far-fetched given that WSU does not challenge any provisions related to disciplinary procedures.

---

Jonathan Taylor, *Milestone: 600+ Title IX/Due Process Lawsuits in [sic] Behalf of Accused Students*, Title IX for All (Apr. 1, 2020), https://www.titleixforall.com/milestone-600-title-ix-due-process-lawsuits-in-behalf-of-accused-students). Texas presumably did not include that article here because WSU's suit does not concern the 2020 Regulations' provisions concerning disciplinary procedures. The article does not note any lawsuits against Texas schools.

Besides, courts are "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Clapper*, 568 U.S. at 413. In the absence of the 2020 Regulations, *maybe* Texas schools will decide to implement bad policies, and *maybe* third parties will decide to file lawsuits as a result. But Texas can hardly claim any resultant injuries would be "certainly impending or . . . fairly traceable" if the Court struck the challenged portions of the 2020 Regulations. *Id.*

### 2. Texas's Threatened Injury of Litigation Costs Stemming from Increased Liability Is Insufficient for Article III Standing

Texas's second threatened injury – increased "litigation expenses" due to "broad[er] . . . liability," ECF 19-1 at 15 – is also highly speculative and attenuated from the regulations at issue. The state is correct that the 2020 Regulations reduce its liability; the new standards require schools to do less to respond to sexual harassment. It is unclear, though, what litigation costs it fears it will accrue as a result of the setting aside of the challenged regulations. If Texas fears lawsuits from victims, it should rest assured: The 2020 Regulations concern standards for OCR's administrative enforcement of Title IX, which are different from the standards used in private damages litigation. *See, e.g.*, 85 Fed. Reg. 30,026, 30,033-30,034 (describing differences between standards adopted by 2020 Regulations for administrative enforcement and standards established by Supreme Court for private damages litigation). If Texas means to refer to the risk that people its schools sanction for sexual harassment may sue in response, that threatened injury is not "clearly impending" or "fairly traceable" to the relevant parts of the 2020 Regulations, as explained at length above. *See supra* pages 9-11.

\* \* \*

For the above reasons, Texas lacks Article III standing, and so cannot intervene – either by right or by the Court's discretion – in WSU's suit.

1

2    ## II.    Texas Is Not Entitled To Intervene As Of Right

3            Under Federal Rule of Civil Procedure 24(a)(2), "a stranger to a lawsuit may intervene 'of

4    right' where . . . letting the lawsuit proceed without that person could imperil some cognizable

5    interest of his." *In re Volkswagen "Clean Diesel" Mktg.,* 894 F.3d 1030, 1037 (9th Cir. 2018).

6    That Rule is satisfied where (1) the motion is timely; (2) the would-be intervenor, or "applicant,"

7    "has a 'significantly protectable' interest relating to the property or transaction which is the subject

8    of the action;" (3) "the disposition of the action may as a practical matter impair or impede [the

9    applicant's] ability to protect that interest;" and (4) "the applicant's interest [is] inadequately

10   represented by the parties to the action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d

11   836, 841 (9th Cir. 2011). "[T]he applicant bears the burden of showing each of the four elements

12   is met," and its "[f]ailure to satisfy any one of the requirements is fatal to the application." *Id*.[8]

13           The Ninth Circuit has held that Rule 24(a)'s requirement that an applicant seeking to

14   intervene as of right must have a significant protectible interest "implicitly" incorporates Article

15   III standing requirements. *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.3

16   (9th Cir. 2001); *Pesticide Action Network N. Am. v. EPA*, No. C 08-01814 MHP, 2008 WL

17   11404954, at *4 n.2 (N.D. Cal. July 8, 2008). Thus, even if Article III itself does not require the

18   state to have standing, Rule 24(a) does. *See SurvJustice Inc. v. DeVos*, No. 18-CV-00535-JSC,

19   2019 WL 1427447, at *4 (N.D. Cal. Mar. 29, 2019) ("Equality Advocates have not adequately

20   alleged standing; therefore, they have not satisfied the significant protectable interest prong of

21   Rule 24(a)(2)."). For the reasons discussed in Part I.B., *see supra* pages 8-12, Texas does not have

22   Article III standing and, for those reasons, it must be denied intervention of right for failing to

23   meet Rule 24(a).

24

25

26

27   ───────────────

28   [8] WSU does not contest that Texas's intervention is timely.

Even if Texas did have standing, it is not entitled to mandatory intervention because it does not have significant protectable interests directly affected by this litigation, disposition of this action will not impair or impede Texas's ability to protect its interests, and Texas's concerns that the federal government will not adequately represent its interests are speculative.

### A. Texas Has Not Established a Non-Speculative Protectable Interest Related to WSU's Claims

"An applicant seeking intervention is held to have a significant protectable interest in an action if (1) the applicant asserts an interest that is protected under some law, and (2) there is a relationship between the applicant's legally protected interest and the plaintiff's claims." *United States v. Sprint Comm., Inc.*, 855 F.3d 985, 991 (9th Cir. 2017) (citation omitted). An economic interest will suffice only if it is protected by law, "non-speculative," and "concrete and related to the underlying subject matter of the action." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004); *see also Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.*, 627 F. App'x 662, 663-64 (9th Cir. 2015) (denying intervention because alleged interest was too speculative); *Greene v. United States*, 996 F.2d 973, 977 (9th Cir. 1993) (same); *Med. Advocates for Healthy Air v. EPA*, No. 11-3515, 2011 WL 4834464, at *5 (N.D. Cal. Oct. 12, 2011) (same). Here, Texas's putative economic interests do not satisfy any of these conditions.

For the same reasons Texas lacks standing, *see supra* pages 8-12, its alleged interests are far too speculative and disconnected from this litigation to justify mandatory intervention. *See Habeas Corpus Res. Ctr.*, 627 F. App'x at 663-64 (denying intervention where applicant's potential benefit from regulation depended on a specific, speculative unfolding of future events). As explained above, Texas predicts that WSU's success will result in state litigation costs – but only if a precise set of attenuated events unfolds first. *See supra* pages 9-11; ECF 19-1 at 14-15. Texas never connects its putative interests to the specific provisions WSU challenges. And,

perhaps most damningly, its predicted parade of horribles relies on Texas's own schools unnecessarily designing bad policies, a risk presumably within Texas's control to avoid. *See supra* pages 9-11 Vague assertions of possible future costs are simply not enough to establish a non-speculative protectable interest connected to the lawsuit. *See Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011) (denying mandatory intervention where applicant "fail[ed] to substantiate its 'direct financial interest' with any evidence, such as affidavits of financial officers or county records"). Nor are incredible claims that a lawsuit may lead to public confusion. *Id.* (denying mandatory intervention where applicants' worry that disposition of case would lead to confusion was disconnected from reality of relevant law).

Texas runs into yet another problem at the end of its predicted chains of events: The state provides no argument whatsoever as to why its desire to avoid the financial cost of potential future litigation is a "legally protected interest." *Sprint Comm.*, 855 F.3d at 991. It is not enough for an applicant to have an economic interest in a suit; the economic interest must be protected by law. *E.g.*, *Alisal*, 370 F.3d at 919; *Greene*, 996 F.2d at 976. For example, an applicant may have a "significantly protectable" economic interest if it has a legal claim to the property in dispute in the lawsuit, *Alisal*, 370 F.3d at 920-21, or where a suit challenges the provision of state benefits to which the intervenors are currently legally entitled, *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003); *see also Ctr. for Biological Diversity v. Jewell*, No. C 13-1749 PSG, 2013 WL 4127790, at *3 (N.D. Cal. Aug. 9, 2013) (noting the types of economic interests that suffice include "personal property, contracts, or permits"). But a financial loss disconnected to a legal entitlement is insufficient under Rule 24(a).[9]

---

[9] In its discussion of alternative avenues to vindicate its interests, Texas asserts that "[w]hen a movant benefits from a regulation, invalidation of that regulation would necessarily impair the movant's interests." ECF 19-1 at 16. Texas might be correct that a movant's benefit from a

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In one illustrative case, an optics manufacturer, Zeiss, sought to intervene in a patent infringement case brought by Nikon against another manufacturer. *Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 650-51 (N.D. Cal. 2004). That defendant was Zeiss's only customer, so if the defendant lost the case, Zeiss's business would suffer catastrophic economic consequences. *Id.* Yet Zeiss still did not "establish[] the requisite legally protectable interest – that is, a statutory, contract, or constitutional interest in this litigation." *Id*. Neither does Texas. The state might certainly desire to avoid costly litigation, but it has no legal right to do so.[10]

### B. Texas Will Have Other Opportunities to Defend Its Interests

Even if Texas had a non-speculative, legally protected interest tied to WSU's specific claims, it would not be entitled to mandatory intervention because it will have many other opportunities to protect that interest. *See, e.g.*, *Alisal*, 370 F.3d at 918 (holding that applicant had protectable interest but could protect that interest through separate avenues); *United States v. City of Los Angeles*, 288 F.3d 391, 402 (9th Cir. 2002) (same). Texas makes clear that its alleged interest is not in protecting the challenged provisions of the 2020 Regulations for their own sake, but in preventing the Department from readopting its previous views. *See* ECF 19-1 at 14-15. If the

---

regulation establishes an interest in the colloquial sense, but its cases stand only for the point that such an interest *may* be a "significantly protectable" one, not that it always is. *See, e.g.*, *Habeas Corpus Res. Ctr.*, 627 F. App'x at 663-64 (holding proposed intervenor's benefit from regulation was too speculative to establish a significantly protectable interest); *United States v. City of Pittsburg*, 467 F. Supp. 1080, 1082 (N.D. Cal. 1979) (explaining "it is far from clear that a labor organization's general economic interest in a restrictive regulation . . . would qualify" as a significantly protectable interest), *aff'd*, 661 F.2d 783 (9th Cir. 1981). Regardless, the state is clear how it believes it benefits from the 2020 Regulations: lowered litigation expenses. ECF 19-1 at 14-15. And, for the reasons described, that benefit is legally unprotected and speculative at best, with no meaningful connection to WSU's claims. *See supra* pages 8-12.

[10] Texas relies heavily on *California v. HHS*, 330 F.R.D. 248 (N.D. Cal. 2019). The case is easily distinguishable. Oregon demonstrated a range of non-financial injuries, including its state's "public health, and sovereign interests." *Id.* at 253; *see* ECF 210, State of Oregon's Mot. to Intervene, *California v. Health and Human Services*, 4:17-CV-05783-HSG, at 5-6, 2019 WL 11729816 (N.D. Cal. Jan. 7, 2019). Texas does not assert, let alone establish, any comparable interests.

Department sought to do so, though, Texas would have multiple opportunities to challenge those positions, separate and apart from intervention in WSU's suit.

*First*, if the Court strikes down the four provisions WSU challenges, and the Department initiates rulemaking to replace those provisions, Texas will have the opportunity to make its views known in the notice and comment period. 5 U.S.C. § 553. If the Department nonetheless adopted a view contrary to Texas's policy preferences, Texas could file its own APA challenge, just as WSU has done here, so long as it can establish its standing. 5 U.S.C. § 706.

*Second*, if the Department ever investigated a Texas school for Title IX violations, the state would have a series of opportunities to press its view of the statute's proper definition and standards. In its brief, Texas fear-mongers that schools must follow the Department's interpretation of Title IX or they risk the Department's unilateral, speedy, and unreviewable revocation of federal funds. Not so. By statute and regulation, OCR must provide funding recipients notice and an opportunity to come into compliance with Title IX before it initiates proceedings to withdraw federal funds. 20 U.S.C. § 1682; 34 C.F.R. § 106.71 (incorporating § 100.8).[11] During that voluntary resolution period, Texas could explain why its interpretation of Title IX is the correct one. If its arguments were unsuccessful and the school refused to come into compliance, the Department might then initiate a formal process to revoke funding before an administrative law judge – during which, once again, Texas would be able to press its legal theories, this time with the opportunity for an administrative hearing. 34 C.F.R. § 100.8(c); *id.* Pt. 101 (regulations governing administrative hearings). And if that judge were unpersuaded and authorized a withdrawal of funds, the Department would need to notify Congress of its decision

---

[11] To WSU's knowledge, the Department has never withdrawn federal funding for a violation of Title IX. *See* Erin E. Buzuvis, *Title IX and Procedural Fairness: Why Disciplined-Student Litigation Does Not Undermine the Role of Title IX in Campus Sexual Assault*, 78 Mont. L. Rev. 71, 79 (2017).

and wait another thirty days. 20 U.S.C. § 1682. During that time, Texas could sue the Department for enforcing Title IX in a manner inconsistent with the statute. 20 U.S.C. § 1683 (authorizing review under the Administrative Procedure Act). Texas, then, does not need to intervene in WSU's suit to protect its alleged interest.

### C. Texas Has Not Overcome The Presumption of Adequate Representation

Texas is not entitled to intervention as of right for another reason: It has not overcome the presumption that the Defendant will adequately represent its interests. "Where [a] party and the proposed intervenor share the same ultimate objective, a presumption of adequacy of representation applies." *Geithner*, 644 F.3d at 841 (internal quotation marks omitted). And "[i]n the absence of a very compelling showing to the contrary, it will be presumed that a [government] adequately represents its citizens when the applicant shares the same interest." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (internal quotation marks omitted). Crucially, within the Ninth Circuit, "the mere change from one presidential administration to another, a recurrent event in our system of government," is insufficient to rebut these twin presumptions. *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002). *Cf.* ECF 19-1 at 17 (relying on out-of-circuit law for contrary assertion). So too are "[c]ampaign rhetoric and perceived philosophical differences." *City of Los Angeles*, 288 F.3d at 403.

#### 1.  Texas Has Not Demonstrated the Defendant Does Not Share Its Objective

Texas's objective is to protect the 2020 Regulations; courts generally assume a government will defend its own policies. *See, e.g.*, *Geithner*, 644 F.3d at 841; *Valley View Health Care, Inc. v. Chapman*, No. 1:13-CV-0036-LJO-BAM, 2013 WL 4541602, at *8 (E.D. Cal. Aug. 27, 2013); *see also Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 561 (1st Cir. 2021) (starting with "a rebuttable presumption that the government will defend adequately its action"). The state asserts that its participation is nonetheless necessary given "the Biden Administration['s] . . . open

hostility to the [2020 Regulations]." ECF 19-1 at 18. But the Administration has expressed no such view. The government continues to defend the 2020 Regulations in a pending challenge in the District of Massachusetts. *See Victim Rights Law Center v. Rosenfelt*, No. 1:20-cv-11104 (D. Mass). In a second suit in the District of Columbia, the government requested a stay to "review the underlying rule at issue." ECF 19-1 at 18 (citing ECF 144, *Commonwealth of Pennsylvania v. DeVos*, 1:20-cv-01468-CJN (D.D.C. Feb. 3, 2021)).[12] The request was consistent with the White House's Executive Order directing the Secretary of Education and Attorney General to "review all existing regulations . . . and any other similar agency actions that are or may be inconsistent with" the Administration's anti-discrimination policy. Exec. Order No. 14021 (Mar. 8, 2021). That review is not yet complete. As a result, it is speculative for Texas to assert the Administration has adopted a position "hostil[e]" to the 2020 Regulations; the Administration has not adopted any position at all. Besides, all of the statements by the Administration that Texas cites discuss the 2020 Regulations as a whole, but WSU challenges only four pieces of it – demonstrating, once again, a mismatch between Texas's concerns and the scope of this lawsuit.

### 2. Texas's Belief that the Defendant Will Make Different Legal Strategic Decisions is Insufficient to Demonstrate Inadequate Representation

Texas suggests, in passing, that the Defendant will not adequately represent its interests because it "might omit from its defense key arguments." ECF 19-1 at 18. Although the state does not identify what these "key arguments" are, WSU believes Texas is probably referring to its affirmative defense, discussed above, that "[s]ome or all of the relief Plaintiff seeks would violate the First, Fifth, or Fourteenth Amendments of the United States Constitution" – in other words, that WSU must lose because the 2020 Regulations are constitutionally required. ECF 19-1 at 37.

---

[12] Texas, which was granted leave to permissively intervene in that action, recently joined the other parties in requesting an extension of the stay. ECF 148, *Commonwealth of Pennsylvania v. DeVos*, 1:20-cv-01468-CJN (D.D.C. May 5, 2021).

*Plaintiff's Opposition to Texas's Motion to Intervene - 3:21-cv-01626-EMC*          19

Strategic differences, however, do not amount to different ultimate objectives. *See United States v. City of Los Angeles*, 288 F.3d 391, 402-03 (9th Cir. 2002) ("[D]ifferences in strategy . . . are not enough to justify intervention as a matter of right."); *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996) (same). That is especially true here, given the substance of Texas's affirmative defense. Two other courts have heard the same argument by would-be intervenors who wished to defend the 2020 Regulations. And both courts rightly concluded that debate about the constitutionality of alternative positions was wholly separate from arguments about the validity of the existing rule. *Victim Rts. L. Ctr.*, 988 F.3d at 562-63; *New York v. U.S. Dep't of Educ.*, No. 20-CV-4260 (JGK), 2020 WL 3962110, at *3 (S.D.N.Y. July 10, 2020). Here, too, WSU's suit concerns whether the 2020 Regulations complied with the APA, not whether "any other definition or procedural requirement in a [Department] Rule would be unconstitutional." *New York*, No. 20-CV-4260 (JGK), 2020 WL 3962110, at *3. Indeed, Texas's desired strategy would run headlong into principles of constitutional avoidance by urging the Court to address unnecessary constitutional questions. *Victim Rts. L. Ctr.*, 988 F.3d at 563. For that reason, the First Circuit explained, the Defendant's decision not to make such an argument is hardly evidence of inadequate representation. *Id.*

Texas's insistence that it must intervene to make unspecified arguments unsupported by the government is particularly strained given the nature of an APA suit. "It is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907 (2020) (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). As a result, the 2020 Regulations can only be defended based on a fixed universe of justifications already endorsed by the Department. If Texas thinks the rule is good policy for a separate reason, that is not a legal basis for intervention.

1

***

2 For the above reasons, Texas is not entitled to intervention as of right.

### III.    The Court Should Deny Texas Permissive Intervention

4 Even if it has Article III standing, Texas also fails to meet the requirements for permissive

5 intervention. Under Federal Rule 24(b)(1)(B), a court may exercise discretion to grant permissive

6 intervention to an applicant that "shows (1) independent grounds for jurisdiction; (2) the motion

7 is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or

8 a question of fact in common." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 955 (9th

9 Cir. 2009). Even if an applicant meets the threshold jurisdictional, timeliness, and commonality

10 requirements, a district court nonetheless retains broad discretion to deny permissive intervention.

11 *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). In exercising that discretion, courts

12 "must consider whether the intervention will unduly delay or prejudice the adjudication of the

13 original parties' rights." Fed. R. Civ. P. 24(b)(3). The Court may also consider factors – sometimes

14 known as "*Spangler* factors" after an influential case – including "the nature and extent of the

15 intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to

16 advance, and its probable relation to the merits of the case . . . , [and] whether the intervenors'

17 interests are adequately represented by other parties." *Spangler v. Pasadena City Bd. of Educ.*, 552

18 F.2d 1326, 1329 (9th Cir. 1977).

19

### A.    Texas's Alleged Interests are Too Speculative and Attenuated from WSU's Claims

22 As with mandatory intervention, permissive intervention is not appropriate where, as here,

23 the applicant's interests are "nonexistent, contingent on future events, or tangential to th[e]

24 proceeding." *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, No. 5:09-CV-02502 EJD,

25 2012 WL 4717814, at *6 (N.D. Cal. Sept. 28, 2012), *aff'd*, 534 F. App'x 665 (9th Cir. 2013). In

such a circumstance, the applicant's defense and the main action lack a common question of law or fact – a threshold requirement for permissive intervention. *See id.*; *see also Med. Advocates for Healthy Air v. EPA*, No. 11-3515, 2011 WL 4834464, at *5 (N. D. Cal. Oct. 12, 2011) (holding applicant failed to make threshold showing for permissive intervention because its alleged interests were speculative and too attenuated from the plaintiff's case case). The discretionary *Spangler* factors also weigh against granting intervention when an applicant's interests are so speculative and attenuated from the plaintiff's action. *See Spangler*, 552 F.2d at 1329 (noting court may consider "the nature and extent of the intervenors' interest" and their positions' "probable relation to the merits of the case").

As described above, Texas's alleged interests in this litigation are highly speculative with no established connection to WSU's claims. *Supra* pages 8-12 (explaining why Texas's interests are speculative and attenuated). Texas clearly supports, and believes it benefits from, the 2020 Regulations as a whole. But it has not established an interest in the four specific provisions WSU challenges, three of which Texas never even mentions. Texas mentions the one other challenged part of the rule, the definition of sexual harassment, only in passing. ECF 19-1 at 14. And the state never provides a concrete, credible explanation as to how the rescission of that definition would injure Texas. *See supra* pages 8-12. As such, Texas cannot establish the requisite common question of law or fact related to the specific claims at issue in this case, and the *Spangler* factors discourage permissive intervention as well.

**B. Texas Has Not Overcome the Presumption that the Defendant Will Represent its Interests.**

As with intervention as of right, "the adequacy of representation alone is a sufficient ground to deny permissive intervention." *Carroll v. Wells Fargo*, No. 15-02321, 2016 WL 3951650, at *1 (N. D. Cal. July 22, 2016) (Chen, J.); *see also Spangler*, 552 F.2d at 1329 (noting court may

consider "whether the intervenors' interests are adequately represented by other parties"). For the reasons explained above, Texas has failed to overcome the presumptions that the Defendant will adequately represent the state's putative interests. *See supra* pages 18-20.

### C.  Texas's Intervention Will Cause Undue Delay and Prejudice.

Just as important here is a concern that uniquely dominates consideration of permissive intervention: potential "undu[e] delay or prejudice [of] the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Intervention will cause such an effect if it will insert into the case "extraneous legal and factual issues that [the plaintiff's] lawsuit would not otherwise invoke." *Apple Inc. v. Iancu*, No. 20-06128, 2021 WL 411157, at *6 (N.D. Cal. Feb. 5, 2021) (quoting *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 414 (N.D. Cal. 2004)). "Such allegations would divert time and resources from the principal thrust of [the plaintiff's] lawsuit and entangle the legal and factual issues involved therein within a web that is not of the original parties' making." *Id*.; *see also Sierra Club v. EPA*, No. 13-2809, 2013 WL 5568253, at *5 (N.D. Cal. Oct. 9, 2013) (denying permissive intervention because applicant's claims were "not at issue in th[e] litigation" and "opening the door to . . . additional contentions would only serve to confuse the matters at issue in the complaint").

Texas's intervention would cause exactly this effect. As discussed above, Texas's brief and proposed Answer suggests it desires to make arguments – including, it appears, that any alternative to the 2020 Regulations would be unconstitutional – that it believes the Defendant will not. *See supra* pages 19-20. For the reasons explained, such arguments are, at best, well outside the scope of WSU's suit, threatening to turn this litigation into either a referendum on the constitutional bounds of sexual harassment law or a freewheeling policy debate about the 2020 Regulations. *Id*. Undoubtedly, they will distract from the legal issues actually present in the case. For that reason, the Court should deny permissive intervention. *Cf. Apple Inc.*, No. 20-06128, 2021 WL 411157,

at *6 (denying permissive intervention because it "[ran] the risk of transforming the case from one

assessing a single agency rule to one evaluating an effort to compel rulemaking").

## CONCLUSION

For the above reasons, WSU respectfully asks the Court to deny Texas's motion to

intervene.

Date: May 6, 2021                                    Respectfully submitted,


Seth M. Galanter*                          Adele P. Kimmel (CA Bar No. 126843)
National Center for Youth Law              Alexandra Z. Brodsky*
712 H Street NE, Suite 32020               Public Justice
Washington, DC 20002                       1620 L Street NW, Suite 630
Ph: (202) 868-4781                         Washington, DC 20036
Fax: (510) 835-8099                        Ph: (202) 797-8600
Email: sgalanter@youthlaw.org              Fax: (202) 232-7203
                                           Email: akimmel@publicjustice.net
                                                    abrodsky@publicjustice.net




Linda M. Correia*                          Adrienne Spiegel (CA Bar No. 330482)
Lauren A. Khouri*                          Public Justice
Correia & Puth, PLLC                       475 14th Street, Suite 610
1400 16th Street NW, Suite 450             Oakland, CA 94612
Washington DC 20036                        Ph: (510) 622-8150
Ph: (202) 602-6500                         Fax: (202) 232-7203
Fax: (202) 602-6501                        Email: aspiegel@publicjustice.net
Email: lcorreia@correiaputh.com
        lkhouri@correiaputh.com            *admitted pro hac vice

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 6, 2021, a true and accurate copy of the foregoing was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send a notification of the filing to counsel in this case.

<i>/s/ Lauren A. Khouri</i>