John C. He (CA Bar No. 328382)
Public Justice
475 14th Street, Suite 610
Oakland, CA 94612
Ph: (510) 622-8150
Fax: (202) 232-7203
Email: jhe@publicjustice.net

*Listing continues on next page*

Counsel for Plaintiff The Women's Student Union

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE WOMEN'S STUDENT UNION,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION,<br><br>*Defendant*. | **PLAINTIFF'S OPPOSITION TO ORGANIZATIONAL MOVANTS' MOTION TO INTERVENE AS DEFENDANTS**<br><br>Civil Action No. 3:21-cv-01626-EMC<br><br>Judge: Honorable Edward M. Chen<br><br>Hearing: July 15, 2021, 1:30 PM (virtual) Courtroom 5, 17th Floor, 450 Golden Gate Ave., San Francisco, CA 94102 |

Seth M. Galanter*
National Center for Youth Law
712 H Street NE, Suite 32020
Washington, DC 20002
Ph: (202) 868-4781
Fax: (510) 835-8099
Email: sgalanter@youthlaw.org

Adele P. Kimmel (CA Bar No. 126843)
Alexandra Z. Brodsky*
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
Ph: (202) 797-8600
Fax: (202) 232-7203
Email: akimmel@publicjustice.net
        abrodsky@publicjustice.net

Linda M. Correia*
Lauren A. Khouri*
Correia & Puth, PLLC
1400 16th Street NW, Suite 450
Washington DC 20036
Ph: (202) 602-6500
Fax: (202) 602-6501
Email: lcorreia@correiaputh.com
        lkhouri@correiaputh.com

*admitted pro hac vice

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 1

I.  MOVANTS ARE NOT ENTITLED TO INTERVENE AS OF RIGHT ..........................1

  A.  Movants Lack Standing ................................................................................2

    1.  Movants' Fear That Universities Will Adopt Unconstitutional Policies If the 2020 Regulations' Definition of Sexual Harassment Is Set Aside Is Insufficient to Establish Standing ............................................................... 3

    2.  The Threatened Injury to Movants' Student Members Is Insufficient for Article III Standing ................................................................................. 8

  B.  Movants Have Not Established a Protectable Interest Related to WSU's Claims .......9

  C.  The Defendant Adequately Represents Movants' Interests ....................................11

    1.  Movants' Desire to Add Constitutional Arguments Does Not Establish Inadequacy. ................................................................................. 12

      i.  The 2020 Regulations May Not Be Defended on the Novel Constitutional Grounds Movants Advance .................................. 12

      ii.  Movants' Arguments Run Headlong Into Principles of Constitutional Avoidance ................................................................ 14

    2.  Movants' Different Motivations for Defending the Rule Do Not Establish Inadequacy ................................................................................. 16

  D.  Movants' Interests Will Not Be Impaired in the Absence of Intervention ...............18

II.  THE COURT SHOULD DENY MOVANTS PERMISSIVE INTERVENTION ............20

  A.  Movants' Alleged Interests are Too Speculative and Attenuated from WSU's Claims ..................................................................................................20

  B.  Movants Have Not Overcome the Presumption that the Defendant Will Represent its Interests ................................................................................................21

  C.  Movants' Intervention Will Cause Undue Delay and Prejudice ..............................21

III.  IF THE COURT GRANTS SOME FORM OF INTERVENTION, IT SHOULD LIMIT MOVANTS TO DEFENDING THE EXISTING DEFINITION OF SEXUAL HARASSMENT ..................................................................................................22

CONCLUSION ................................................................................................................ 23

1

2

**TABLE OF AUTHORITIES**

3

**Cases**

4

*Apple Inc. v. Iancu*,
    No. 5:20-CV-06128-EJD, 2021 WL 411157 (N.D. Cal. Feb. 5, 2021) ...................................22

5

6

*Arakaki v. Cayetano*,
    324 F.3d 1078 (9th Cir. 2003), *as amended* (May 13, 2003) ......................................11, 15, 17

7

8

*Bates v. Jones*,
    127 F.3d 870 (9th Cir. 1997) .........................................................................................10

9

*Bicycle Trails Council of Marin v. Babbitt*,
    82 F.3d 1445 (9th Cir. 1996), *as amended* (June 17, 1996) .....................................13

10

11

*C.R. v. Eugene Sch. Dist. 4J*,
    835 F.3d 1142 (9th Cir. 2016) ..........................................................................................7

12

*Californians for Safe and Competitive Dump Truck Transportation v. Mendonca*,
    152 F.3d 1184 (9th Cir. 1998) ........................................................................................18

13

14

*Carroll v. Wells Fargo & Co.*,
    No. 15-CV-02321-EMC, 2016 WL 3951650 (N.D. Cal. July 22, 2016)................................21

15

16

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984)................................................................................................12, 13

17

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
    647 F.3d 893 (9th Cir. 2011) .........................................................................................15

18

19

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..........................................................................................................2

20

21

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)................................................................................................2, 3, 6

22

*Day v. Apoliona*,
    505 F.3d 963 (9th Cir. 2007) .........................................................................................19

23

24

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
    140 S. Ct. 1891 (2020)...................................................................................................13

25

26

*Donnelly v. Glickman*,
    159 F.3d 405 (9th Cir. 1998) .........................................................................................20

27

*Eagle Pharms., Inc. v. Azar*,
    952 F.3d 323 (D.C. Cir. 2020) .......................................................................................13

28

*Plaintiff's Opposition to Movants' Motion to Intervene - 3:21-cv-01626-EMC*                    ii

*Freedom from Religion Found., Inc. v. Geithner*,
   644 F.3d 836 (9th Cir. 2011) ...................................................2, 9, 11

*Greene v. United States*,
   996 F.2d 973 (9th Cir. 1993) .......................................................10, 19

*Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.*,
   627 F. App'x 662 (9th Cir. 2015) ...........................................................11

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)...............................................................................10

*Idaho Farm Bureau Fed'n v. Babbitt*,
   58 F.3d 1392 (9th Cir. 1995) ..................................................................9

*Missouri ex rel. Koster v. Harris*,
   847 F.3d 646 (9th Cir. 2017) ..................................................................3

*League of United Latin Am. Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997) ..............................................................16

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)...........................................................................2, 3

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
   485 U.S. 439 (1988).............................................................................14

*Mayfield v. United States*,
   599 F.3d 964 (9th Cir. 2010) ..................................................................8

*Med. Advocates for Healthy Air v. EPA*,
   No. CV 11-3515 SI, 2011 WL 4834464 (N.D. Cal. Oct. 12, 2011) ........20

*Mishewal Wappo Tribe of Alexander Valley v. Salazar*,
   No. 5:09-CV-02502 EJD, 2012 WL 4717814 (N.D. Cal. Sept. 28, 2012), *aff'd*,
   534 F. App'x 665 (9th Cir. 2013) ...........................................................20

*New York v. U.S. Dep't of Educ.*,
   No. 20-CV-4260 (JGK), 2020 WL 3962110 (S.D.N.Y. July 10, 2020)...............12, 14, 18, 19

*Nikon Corp. v. ASM Lithography B.V.*,
   222 F.R.D. 647 (N.D. Cal. 2004).............................................................10

*Nw. Forest Res. Council v. Glickman*,
   82 F.3d 825 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996).........9, 10, 11, 13

*Pennsylvania v. President U.S.*,
   888 F.3d 52 (3d Cir. 2018).....................................................................17

*Perry v. Proposition 8 Off. Proponents*,
  587 F.3d 947 (9th Cir. 2009) ...............................................16, 20, 22

*Pesticide Action Network N. Am. v. EPA*,
  No. C 08-01814 MHP, 2008 WL 11404954 (N.D. Cal. July 8, 2008) .......................2

*Prete v. Bradbury*,
  438 F.3d 949 (9th Cir. 2006) .................................................................16

*Sierra Club v. EPA*,
  No. 13-CV-2809-YGR, 2013 WL 5568253 (N.D. Cal. Oct. 9, 2013)......................22

*Spangler v. Pasadena City Bd. of Educ.*,
  552 F.2d 1326 (9th Cir. 1977) .........................................................20, 21

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009).............................................................................8

*SurvJustice Inc. v. DeVos*,
  No. 18-CV-00535-JSC, 2019 WL 1427447 (N.D. Cal. Mar. 29, 2019)...................2

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001) .................................................................2

*Tinker v. Des Moines Independent Community School District*,
  393 U.S. 503 (1969)...........................................................................7

*Trbovich v. United Mine Workers of America*,
  404 U.S. 528 (1972)..........................................................................17

*United States v. Alisal Water Corp.*,
  370 F.3d 915 (9th Cir. 2004) ..........................................................11, 18

*United States v. City of Los Angeles*,
  288 F.3d 391 (9th Cir. 2002) .......................................................9, 11, 18

*United States v. Sprint Comm., Inc.*,
  855 F.3d 985 (9th Cir. 2017) .................................................................9

*Victim Rts. L. Ctr. v. Rosenfelt*,
  988 F.3d 556 (1st Cir. 2021) ........................................................14, 15, 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  894 F.3d 1030 (9th Cir. 2018) ...............................................................1

**Constitution, Statutes, and Rules**

U.S. Const., First Amendment ......................................................... *passim*

U.S. Const., Fifth Amendment.................................................................15

Administrative Procedure Act..................................................................... *passim*

5 U.S.C. § 553(c) .......................................................................................18

5 U.S.C. § 706 ............................................................................................18

Fed. R. Civ. P. 24 ......................................................................................10

Fed. R. Civ. P. 24(a) ...................................................................................2

Fed. R. Civ. P. 24(a)(2) ..............................................................................1

Fed. R. Civ. P. 24(b)(1)(B) .......................................................................20

Fed. R. Civ. P. 24(b)(3).......................................................................20, 22

**Other Authorities**

34 C.F.R. § 106.6 ........................................................................................5

34 C.F.R. § 106.6(d)(1) ...............................................................................5

34 C.F.R. § 106.45(b)(3)(i) .........................................................................4

34 C.F.R. §§ 75.500(b)(1), 76.500(b)(1) ....................................................6

85 Fed. Reg. 30,026 (May 19, 2020) ...................................................4, 5, 9

85 Fed. Reg. 59,916, 59,916 (Sept. 23, 2020) ............................................6

85 Fed. Reg. 61,732 (Sept. 30, 2020) .........................................................6

Brief for Appellee, *Californians for Safe & Competitive Dump Truck Transp.*,
    1997 WL 33551014 (9th Cir. Oct. 6, 1997)..........................................18

Foundation for Individual Rights in Education, Comment Letter on the
    Department of Education's Proposed Regulations on Title IX Enforcement at
    (Jan. 30, 2019), https://bit.ly/2Nl6qss .............................................5, 7

*Universities Face U.S. Inquiries Into Free-Speech Controversies*, The Chron. of
    Higher Educ. (Oct. 1, 2020), https://bit.ly/3cEq3Jr .................................6

1

**INTRODUCTION**

2  This case is about the Title IX regulations the U.S. Department of Education promulgated

3  in 2020. The sole question presented is whether four components of those regulations (the "2020

4  Regulations") complied with the Administrative Procedure Act ("APA"). The Foundation for

5  Individual Rights in Education, Independent Women's Law Center, and Speech First, Inc.

6  (collectively "Movants") seek to turn this suit into something far different: a fight over the

7  constitutional bounds of sexual harassment law writ large, the results of which Movants hope will

8  hamstring any future rulemaking the Defendant might pursue. Movants are free to develop

9  litigation that will raise the momentous First Amendment question it wants answered. But this case

10  does not. Because the scope of the Court's inquiry here is circumscribed by the APA, the

11  constitutional argument proffered by Movants can have no influence on the outcome of this suit.

12  And Movants' true objective—to thwart the Defendant from adopting an alternative definition of

13  sexual harassment in the future—can be neither advanced nor frustrated by WSU's case. As a

14  result, Movants cannot uphold their burden to show an entitlement to mandatory or permissive

15  intervention.

16

17

18  **ARGUMENT**

19  **I.     Movants Are Not Entitled To Intervene As Of Right**

20  Under Federal Rule of Civil Procedure 24(a)(2), "a stranger to a lawsuit may intervene 'of

21  right' where . . . letting the lawsuit proceed without that person could imperil some cognizable

22  interest of his." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,*

23  894 F.3d 1030, 1037 (9th Cir. 2018). That Rule is satisfied where (1) the motion is timely; (2) the

24  would-be intervenor has "a 'significantly protectable' interest relating to the property or

25  transaction which is the subject of the action;" (3) "the disposition of the action may as a practical

26  matter impair or impede [the movant's] ability to protect that interest;" and (4) the movant's

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"interest [is] inadequately represented by the parties to the action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011). The movant "bears the burden of showing each of the four elements is met," and its "[f]ailure to satisfy any one of the requirements is fatal to the application." *Id*. Here, Movants are not entitled to mandatory intervention because they do not satisfy three of these elements and cannot establish standing, a threshold requirement.[1]

## A.    Movants Lack Standing

The Ninth Circuit has held that Rule 24(a)'s requirement that an applicant seeking to intervene as of right must have a significant protectable interest "implicitly" incorporates Article III standing requirements. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.3 (9th Cir. 2001); *SurvJustice Inc. v. DeVos*, No. 18-CV-00535-JSC, 2019 WL 1427447, at *4 (N.D. Cal. Mar. 29, 2019); *Pesticide Action Network N. Am. v. EPA*, No. C 08-01814 MHP, 2008 WL 11404954, at *4 n.2 (N.D. Cal. July 8, 2008).

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks omitted). Where a party's standing rests on future harm, the "threatened injury must be *certainly impending* to constitute injury in fact." *Id*. "[A]llegations of *possible* future injury are not sufficient." *Id*. (internal quotation marks omitted); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (noting an alleged "threat of injury must be both 'real and immediate,' not 'conjectural' or hypothetical'"). In addition, and crucially for this motion, where the party that must establish standing is not "the object of the government action or inaction [it] challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan v. Defs. of Wildlife*,

---

[1] WSU does not contest that Movants' motion to intervene is timely.

504 U.S. 555, 562 (1992) (internal quotation marks omitted). Indeed, when, as here, the injury "arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed." *Id.* That is especially so when the threatened injury is "contingent upon the decisions of many independent actors in the causal chain." *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 654 (9th Cir. 2017) (citing *Clapper*, 568 U.S. at 413). Likewise, "it must be 'likely,' as opposed to merely 'speculative,' that the inquiry will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).

Movants have failed to make these showings. Although with slight variations between them, Movants FIRE and Speech First say the 2020 Regulations' definition of "sexual harassment" has allowed them to shift their resources to First Amendment cases that do not involve allegations of sexual harassment, and that if WSU were successful in having the regulations set aside, they would have to shift those resources back to their prior uses to First Amendment cases involving allegations of sexual harassment. ECF 35-1 at 6.[2] But their own accounts make clear that shifting of resources back would only arrive at the end of highly speculative "chain of possibilities," each dependent on third parties making certain discretionary decisions. *Clapper*, 658 U.S. at 410.

      1. *Movants' Fear That Universities Will Adopt Unconstitutional Policies If the 2020 Regulations' Definition of Sexual Harassment Is Set Aside Is Insufficient to Establish Standing*

Movants' theory of standing flows from one legal premise—that the First Amendment bars universities from prohibiting sexual harassment unless it is severe, pervasive, and objectively offensive—and a number of factual premises: (1) before the 2020 Regulations were adopted, some

---

[2] The five sentences describing the Independent Women's Law Center, ECF 35-1 at 4, offer no indication how it benefits from the 2020 Regulations and how setting aside the Regulations' definition of "sexual harassment" would injure it. We thus do not address that movant further.

universities violated this First Amendment limitation in defining sexual harassment because they believed the Department would otherwise find them in violation of Title IX and Movants devoted some of their resources to opposing violations caused by those beliefs; (2) the 2020 Regulations' definition of sexual harassment "has reduced the frequency," ECF 35-1 at 3, with which universities violate the First Amendment because the universities comply with the Regulations and the Regulations do not require universities to prohibit sexual harassment unless it is severe, pervasive and objectively offensive, thus permitting Movants to shift their resources elsewhere; and (3) if the 2020 Regulations' definition of sexual harassment is set aside, universities will abandon that definition and return to a definition that violates the First Amendment, thus requiring Movants to shift their resources back.

The first two factual premises are only articulated in conclusory terms with no factual support. We question whether Movants would be able to proffer evidence supporting their causal claims that (1) it was the Department's prior definition of "sexual harassment" that caused some universities to violate the First Amendment; and (2) it was the 2020 Regulations' definition— which has been in effect for nine months, and which still permits schools to use broader definitions—that "has reduced the frequency with which universities attempt to punish free speech on sensitive issues of gender and sex," ECF 35-1 at 3 (FIRE); *see id.* at 4 ("implementation of the rule has permitted FIRE and its student members to shift resources and efforts"), 5 (Speech First) ("If the Final Rule stands, schools will bring their policies in line with it, freeing Speech First to spend its resources on other pressing constitutional concerns."). *See also* 34 C.F.R. § 106.45(b)(3)(i) (noting Title IX regulation does not foreclose schools from addressing sexual harassment that does not meet its new definition); 85 Fed. Reg. 30,026, 30,289 (May 19, 2020) (same).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Even if those claims could be established, Movants would still bear their burden of making plausible allegations (and later introducing evidence) that if the 2020 Regulations' definition of "sexual harassment" is set aside, then universities will make the decision to adopt a definition that violates the First Amendment (as understood by Movants) to align with earlier Department guidance. To the contrary, there are several significant legal reasons why such an allegation is implausible.

First, a separate provision of the 2020 Regulations would prohibit universities from changing their definition of sexual harassment if, as Movants claim, the current definition is required by the First Amendment in higher education. The 2020 Regulations amended 34 C.F.R. § 106.6 to make clear that nothing in the regulations implementing Title IX requires an educational institution to "[r]estrict any rights that would otherwise be protected from government action by the First Amendment." 34 C.F.R. § 106.6(d)(1). While one could read this provision as a mere truism, FIRE told the Department in the comment it submitted during the rulemaking, which Movants link to in their memorandum, ECF 35-1 at 2, that the "plain declaration that Title IX enforcement will be conducted within a framework that recognizes the essentiality of constitutional rights" was "an important component of the proposed regulations." Foundation for Individual Rights in Education, Comment Letter on the Department of Education's Proposed Regulations on Title IX Enforcement at 5 (Jan. 30, 2019), https://bit.ly/2Nl6qss. FIRE explained that this provision was "helpful, and unfortunately necessary, in light of" university constitutional violations in adjudicating Title IX complaints. *Id.*; *see also* 85 Fed. Reg. at 30,419 (Department explaining that "§ 106.6(d)(1) acts as a saving clause to ensure that institutions do not violate the First Amendment's requirements"). Movants offer no grounds to believe this provision would not prove effective.

Further, the Department has taken other steps in the higher education arena "to promote the First Amendment's guarantees of free expression and academic freedom, as the courts have construed them." 85 Fed. Reg. 59,916, 59,916 (Sept. 23, 2020). Separate from its Title IX regulations, the Department promulgated new regulations that provide that each "grantee that is [a public] institution of higher education . . . must also comply with the First Amendment to the U.S. Constitution . . . as a material condition of the Department's grant." 34 C.F.R. §§ 75.500(b)(1), 76.500(b)(1). A finding that a university violated the First Amendment, and thus a material condition of its grant, would allow the Department to "impose special conditions aimed at remedying noncompliance, temporarily withhold cash payments pending correction of the institution's deficiency, suspend or otherwise terminate a Federal award, or potentially disbar the institution." 85 Fed. Reg. at 59,924.

Consistent with those regulations, the Department has opened multiple investigations to assess whether universities' actions adhered to their public representations that they comply with the First Amendment and indicated that fines might be assessed if the universities did not. *See*, *e.g.*, 85 Fed. Reg. 61,732 (Sept. 30, 2020); Katherine Mangan, *3 Universities Face U.S. Inquiries Into Free-Speech Controversies*, The Chron. of Higher Educ. (Oct. 1, 2020), https://bit.ly/3cEq3Jr.

Courts are "reluctant to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Clapper*, 568 U.S. at 413. In the absence of the 2020 Regulations' definition of sexual harassment, *maybe* universities will decide to implement unconstitutional definitions, and *maybe* Movants will need to shift resources to deal with those decisions. But Movants can hardly claim any resultant injuries would be "certainly impending or . . . fairly traceable" if the Court set aside the challenged definition of the 2020 Regulations. *Id.* at 414. To the contrary, Movants' implication that some universities currently in compliance with the 2020 Regulations' definition of sexual harassment will return to their old,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

allegedly unconstitutional, policies if the 2020 Regulations' definition is set aside is speculative and disregards the other legal tools the Department has deployed to require compliance with the First Amendment. Thus, it is not "likely" that Movants will have to shift their resources to address an increase in universities' violations of the First Amendment (as Movants view it) if the Regulations' definition is set aside.

Finally, we note that the implausibility of Movants' assertion—that universities will change their definition of sexual harassment if the 2020 Regulations' definition is set aside even if, as Movants assert, such a change would violate the First Amendment—in no way suggests that WSU would not benefit from the Court setting aside the 2020 Regulations' definition of "sexual harassment." Movants are laser focused on the First Amendment in *higher education*—that is where they devote their resources, where their student members are enrolled, and where the case law they cite applies.[3] Movants do not allege, however, that the definition of "sexual harassment" adopted in the 2020 Regulations embodies a constitutionally-required standard *when applied to public elementary and secondary schools*. Nor could they. First Amendment rights of students in public school environments are governed by the more forgiving standard laid out in *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969). Applying *Tinker*, the Ninth Circuit held that a school district could suspend a seventh-grade student for participating in "sexual harassment," which was defined by the school to include "'verbal . . . conduct of a sexual nature' including 'sex-oriented verbal kidding, teasing, or jokes.'" *C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142, 1148 (9th Cir. 2016). The Court concluded that schools "must have the authority to discipline students for engaging in sexual inappropriate and harassing speech." *Id.* at 1152. Thus, WSU

---

[3] FIRE explained in its comment its "mission is exclusively to defend the rights of students and faculty in the higher education setting" and thus it did "not address sections of the proposed regulations that regulate K-12 schools." FIRE Comment, *supra*, at 4 n.4.

would benefit from the Department enforcing Title IX's prior definition of sexual harassment against its school district even if that same definition could not be enforced against universities under the First Amendment, as Movants' claim.

### 2. The Threatened Injury to Movants' Student Members Is Insufficient for Article III Standing

Movants also claim that they have college student members who "have . . . been subjects of university disciplinary proceedings relating to alleged sexual harassment in the past." ECF 35-1 at 4. But Movants do not explain or allege how the definition of "sexual harassment" was relevant to any particular member's past disciplinary proceedings. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 495 (2009) (holding that past injury could not suffice for standing where "it was not tied to application of the challenged regulations"). Even if they did plausibly allege that they were injured in the past by a university using a definition of sexual harassment that differs from the 2020 Regulations, such past injury cannot establish current standing. *See Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (noting that ordinarily "[p]ast exposure to harmful or illegal conduct" does not confer standing where the party does not seek retrospective relief). And Speech First's allegation, not repeated by the other Movants, that its members "could be subject" to disciplinary proceedings by their colleges "in the future," ECF 35-1 at 5, is far too tenuous to support standing. That threatened injury is not "clearly impending" or "fairly traceable" to the relevant part of the 2020 Regulations Movants seek to intervene to defend.

\* \* \*

For the above reasons, Movants lack Article III standing, and so cannot intervene by right in WSU's suit.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.     Movants Have Not Established a Protectable Interest Related to WSU's Claims**

Even if Movants could establish Article III standing, they lack a "significant protectable interest" in the subject of this litigation, as is required for intervention as of right. *Geithner*, 644 F.3d at 841. "An applicant seeking intervention is held to have a significant protectable interest in an action if (1) the applicant asserts an interest that is protected under some law, and (2) there is a relationship between the applicant's legally protected interest and the plaintiff's claims." *United States v. Sprint Comm., Inc.*, 855 F.3d 985, 991 (9th Cir. 2017) (internal quotation marks and alterations omitted). Here, Movants' three putative interests do not satisfy these conditions.

*First*, Movants state that they are entitled to intervene "as a matter of right" in any "action challenging the legality of a measure [they have] supported" during the regulatory notice-and-comment process. ECF 35-1 at 6 (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995)). This misreads Ninth Circuit precedent. True, where a public interest group is "directly involved" in establishing a state statute or federal regulation, they may have a significant protectable interest in that statute or regulation. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996); *see United States v. City of Los Angeles*, 288 F.3d 391, 402 n.5 (9th Cir. 2002) (stating that "special interest groups" may intervene in suits "challenging measures the organizations *helped to create*" (emphasis added)). But Movants submitted two of the over 124,000 public comments the Department received on its proposed Regulations prior to their promulgation in 2020. 85 Fed. Reg. at 30,044. Surely, not every one of these commenters is entitled to intervene as of right. Such a minimal degree of participation in an administrative proceeding falls well short of the "direct involve[ment]" courts in this Circuit have found to justify the intervention of public interest groups in the past. *See, e.g.*, *Idaho Farm*, 58 F.3d at 1398 (conservation group permitted to intervene in

1   action to delist the Spring Snail as an endangered species where it had filed the suit that compelled

2   the agency to list the Spring Snail as endangered in the first place); *see also Nw. Forest Resource*

3   *Council*, 82 F.3d at 837-38 (collecting cases).

4        Nor can Movants simply rest on the fact that they are "public interest groups that advocate

5   for the free speech and due process rights the rule protects." ECF 35-1 at 6. That the 2020

6   Regulations adopted a definition "of the type that [each group] supports and promotes" is

7   insufficient to establish a significantly protectable interest in the subject of this action. *Bates v.*

8   *Jones*, 127 F.3d 870, 874 (9th Cir. 1997) (denying intervention to a public interest group that

9   advocated for term limits in a case challenging term limits).[4]

10       *Second*, Movants do not have a legally protectable interest in allocating their resources any

11  particular way. A parties' diversion of resources may be sufficient to show injury-in-fact for

12  purposes of standing. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 369 (1982). But injury-

13  in-fact is merely necessary, not sufficient, to establish a legally protectable interest required for

14  mandatory intervention under Rule 24. For example, it is not enough for an applicant to have an

15  economic interest in a suit; the economic interest must be protected by law. *See, e.g.*, *Greene v.*

16  *United States*, 996 F.2d 973, 976 (9th Cir. 1993) ("An economic stake in the outcome of the

17  litigation, even if significant, is not enough."); *Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D.

18  647, 650-51 (N.D. Cal. 2004) (holding movant's economic interest in lawsuit was not protectable

19  absent legal entitlement); ECF 27 at 15-16 (collecting cases). Movants' diversion-of-resources

20  theory, then, is not only highly speculative, *see supra* pages 4-8, but turns on a potential injury that

21  would not rise to the level of a "protectable interest" for purposes of intervention.

---

[4] To the extent Movants' argument relies on their interest in members' due process rights, those
are entirely disconnected from the claims at issue here, which do not concern challenges to the
2020 Regulations' procedural provisions. *See generally* Compl., ECF 1.

1     *Third*, Movants cannot demonstrate the necessary non-speculative "relationship" between

2 free speech and due process rights of their members and the claims at issue here. *See United States*

3 *v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (noting legally protectable interest must

4 be "non-speculative" and "related to the underlying subject matter of the action"); *Habeas Corpus*

5 *Res. Ctr. v. U.S. Dep't of Just.*, 627 F. App'x 662, 663 (9th Cir. 2015) (denying intervention

6 because alleged interest was too speculative). As explained above, Movants have not plausibly

7 alleged that vacating the 2020 Regulations would actually threaten the constitutional rights of their

8

9 members. *See supra* pages 4-9.

10     **C.     The Defendant Adequately Represents Movants' Interests**

11     To the extent that Movants have shown standing and a significant and legally protectable

12 interest in this litigation, they have not overcome the presumption that the Defendant will

13 adequately represent that interest. "Where [a] party and the proposed intervenor share the same

14 ultimate objective, a presumption of adequacy of representation applies." *Geithner*, 644 F.3d at

15 841 (internal quotation marks omitted). And "[i]n the absence of a very compelling showing to the

16 contrary, it will be presumed that a [government] adequately represents its citizens when the

17 applicant shares the same interest." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as*

18 *amended* (May 13, 2003) (internal quotation marks omitted). Crucially, strategic differences do

19 not amount to different ultimate objectives. *See United States v. City of Los Angeles*, 288 F.3d at

20 402-03 ("[D]ifferences in strategy . . . are not enough to justify intervention as a matter of right.");

21 *Nw. Forest Res. Council*, 82 F.3d at 838 (same).

22

23

24     Here, Movants admit that the Defendant shares its objective of defending the 2020

25 Regulations, ECF 35-1 at 11, triggering a strong presumption of adequacy. Yet they contend that,

26 for two related reasons, the Defendant does not adequately represent their interests. Those

27 arguments are far from "very compelling." *Arakaki*, 324 F.3d at 1086.

28

1. *Movants' Desire to Add Constitutional Arguments Does Not Establish Inadequacy.*

Movants argue that the Defendant does not adequately represent their interests because, although the government shares their "immediate interest in defending the rule," the Defendant will not make their favored constitutional argument—an argument that, if successful, would foreclose the Department from adopting some alternative positions in the future. ECF 35-1 at 11. But these putative differences are not enough to defeat the presumption of adequate representation because Movants' objectives only diverge from the Defendant's with respect to matters outside the scope of this case. *New York v. U.S. Dep't of Educ.*, No. 20-CV-4260 (JGK), 2020 WL 3962110, at *4 (S.D.N.Y. July 10, 2020) (denying Movants' attempt to intervene in a different challenge to the Regulations because "*[i]n the scope of issues presented in this case*, the objectives of the [Movants] and [the Defendant] are aligned" (emphasis added)).

i. *The 2020 Regulations May Not Be Defended on the Novel Constitutional Grounds Movants Advance*

To start with the basics: WSU's lawsuit is about the 2020 Regulations and the 2020 Regulations alone. The sole question before the Court is whether four portions of those rules were adopted in compliance with the APA. WSU asserts that, in adopting its definition of sexual harassment, the Defendant failed to grapple with tradeoffs and provide reasoned explanations— procedures required by the APA. ECF 1 at 22-23, ¶¶ 85-89. WSU's claim, then, does not call on the Court to identify the full set of definitions the Department could ever adopt. It only asks whether *this* one, promulgated in *this* way, is legal.[5]

---

[5] WSU does not, as Movants claim, argue that Title IX and the APA "mandate" one particular "broadened definition of 'sexual harassment.'" ECF 35-1 at 3. That is, WSU does not make a *Chevron* step one argument that, in passing Title IX, Congress expressed a clear view on what definition of sexual harassment the Department should employ. *See, e.g., Chevron, U.S.A., Inc. v.*

1      "It is a 'foundational principle of administrative law' that judicial review of agency action

2   is limited to 'the grounds that the agency invoked when it took the action.'" *Dep't of Homeland*

3   *Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020) (quoting *Michigan v. EPA*, 576

4   U.S. 743, 758 (2015) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). As a result, the 2020

5   Regulations can only be defended based on a fixed universe of justifications already endorsed by

6   the Department. And Movants are clear that their constitutional argument is not one the

7   Department used to explain its adoption of the 2020 Regulations; after all, that is why Movants

8   are confident the Defendant will not advance its favored arguments. ECF 35-1 at 11. To the extent

9   Movants support the current definition of sexual harassment for a reason different than that given

10  by the Defendant, such reasoning cannot play into the outcome of this suit. Movants thus cannot

11  offer anything to this litigation beyond what the Defendant already provides. *See Nw. Forest Res.*

12  *Council*, 82 F.3d at 838 (evaluating advocacy based on whether applicants would "offer" anything

13  to the proceedings existing parties would "neglect").[6]

14

15

16  _____

17  *Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984); *Bicycle Trails Council of Marin v. Babbitt*, 82 F.3d 1445, 1452 (9th Cir. 1996), *as amended* (June 17, 1996).

18  For their part, although the Movants at times suggest the 2020 Regulations' definition is
19  constitutionally required, their actual argument is a little different: They say that "any broader
    definition of sexual harassment [than the one in the 2020 Regulations] would violate the First
20  Amendment" as applied to higher education. ECF 35-1 at 2. They never suggest that a narrower
    definition would be unconstitutional. Like the Defendant, then, Movants also defend the 2020
21  Regulations' definition of sexual harassment as one within a "range of constitutionally
    permissible definitions," *id.* —specifically, one at the outer bound of that range. Perhaps
22  Movants and the Defendant disagree about the precise contours of the universe of constitutional
    definitions (though that is not apparent from Movants' briefing). But both agree the 2020
23  Regulations adopted a definition of sexual harassment from within a set of constitutionally
    permissible options.

24  [6] Intervenors might be allowed to advance alternative justifications not relied on by the agency in
25  one circumstance: *Chevron* step one arguments, in which they contend "Congress has directly
    spoken to the precise question at issue," *Chevron*, 467 U.S. at 842, and so no analysis of the
26  agency's reasoning is necessary. *See Eagle Pharms., Inc. v. Azar*, 952 F.3d 323, 331 n.12 (D.C.
    Cir. 2020) (citing cases). For the reasons described above, the challenge to the 2020 Regulations'
27  definition of sexual harassment requires instead a step two inquiry. *See supra* page 13 n.5.

28

*Plaintiff's Opposition to Movants' Motion to Intervene - 3:21-cv-01626-EMC*          13

No wonder, then, that two courts have already denied Movants' intervention into APA challenges to the 2020 Regulations on the grounds that their concerns about the constitutionality of alternative definitions are outside the bounds of those cases. *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 562-63 (1st Cir. 2021); *New York*, No. 20-CV-4260 (JGK), 2020 WL 3962110, at *3. The Defendant's sound decision not to try to turn an APA challenge to an existing regulation into a sweeping survey of all the hypothetical positions the Department can and cannot take going forward would not render the government an inadequate representative. *Victim Rts. L. Ctr.*, 988 F.3d at 562-63; *New York*, No. 20-CV-4260 (JGK), 2020 WL 3962110, at *4.

> ### ii.  *Movants' Arguments Run Headlong Into Principles of Constitutional Avoidance*

As the First Circuit noted in denying Movants' intervention in a similar challenge, "[c]ourts are obliged to avoid rulings on constitutional questions when non-constitutional grounds will suffice to resolve an issue." *Victim Rts. L. Ctr.*, 988 F.3d at 563; *see also Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."). "The [M]ovants' putative interest in having certain constitutional issues addressed now rather than later," the Court explained, "does not obviate the principle of constitutional avoidance." *Victim Rts. L. Ctr.*, 988 F.3d at 563; *see also New York*, No. 20-CV-4260 (JGK), 2020 WL 3962110, at *3 n.2 (explaining that constitutional avoidance advises against Movants' intervention in challenge to 2020 Regulations).

Such avoidance is particularly appropriate here because the constitutional questions are not only unnecessary but unhelpful in resolving the case. Even if Movants were correct that the Department's previous sexual harassment definitions were unconstitutional, that would not resolve the question of whether the Department's adoption of *this* definition, from among the permissible

1   options, complied with the APA's procedural requirements. *See supra* page 13-14 & n.5. Movants'

2   constitutional concerns, then, are neither necessary nor sufficient to resolve this case.

3       Movants fail to distinguish their motion to intervene in this case from their unsuccessful

4   attempt to intervene in *Victim Rights Law Center v. Rosenfelt*, which the First Circuit rejected

5   largely on constitutional avoidance grounds. Cherry-picking language, Movants suggest that the

6   Ninth Circuit requires a lesser showing of inadequate government representation than does the

7   First. ECF 35-1 at 11-12. Not so. To be sure, the Ninth Circuit generally does not require an

8   applicant demonstrate inadequacy with "absolute certainty." *Citizens for Balanced Use v. Mont.*

9   *Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011). But neither does the First Circuit. *See, e.g.*,

10  *Victim Rts. L. Ctr.*, 988 F.3d at 561 ("Generally, an applicant for intervention need only make a

11  minimal showing that the representation afforded by existing parties likely will prove inadequate."

12  (internal quotation marks omitted)). And, like the First Circuit, the Ninth Circuit requires a "very

13  compelling showing" to overcome the presumption that the government will adequately represent

14  an applicant's interest. *Arakaki*, 324 F.3d at 1086; *see also Victim Rts. L. Ctr*, 988 F.3d at 561

15  (requiring "a strong affirmative showing that the [government] is not fairly representing the

16  Movants' interests" (internal quotation marks omitted)). Indeed, Movants' intervention is even

17  less justified in this case than it was in *Victim Rights Law Center*. In the latter, plaintiffs challenge

18  the 2020 Regulations not only on APA grounds, but also as a violation of the equal protection

19  guarantee of the Fifth Amendment—a claim for which novel constitutional defenses might be

20  appropriate. *See Victim Rts. L. Ctr*, 988 F.3d at 559, 560 n.1. Movants' arguments that their

1    constitutional arguments were permissible grounds to defend the rule, then, were stronger in the

2    First Circuit.[7]

3          2.    *Movants' Different Motivations for Defending the Rule Do Not Establish*
4                *Inadequacy*

5          Movants also argue that the Defendant is an inadequate representative because the

6    government cares about both protecting free speech and stopping sexual harassment, and Movants

7    are concerned only with the former. ECF 35-1 at 9. But this purported difference in motivations

8    does not, on its own, establish inadequacy. After all, government actors will always have unique

9    institutional concerns about how to balance different constituencies' needs and priorities. Yet they

10   are specially presumed to serve as adequate representatives for those who share their ultimate goals

11   in the litigation. *See supra* pages 11-12; *see also Prete v. Bradbury*, 438 F.3d 949, 957 (9th Cir.

12   2006) (rejecting proposed reason to find inadequate representation that would apply to

13   governments in general, and so "eliminate the presumption of adequate representation when the

14   government and the intervenor-applicant share the same interest"). Movants' "purely speculative"

15   notion that the Defendant's interest, while presently aligned with Movants', may "at some other

16   unspecified time in the future[] diverge" in the event of a future rulemaking does not justify

17   intervention. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997).

18         In assessing adequacy of representation, courts look not to parties' and Movants'

19   motivations broadly, but to their goals within the litigation. *See Perry v. Proposition 8 Off.*

20

21

22

23   _____

24   [7] In trying to distinguish *Victim Rights Law Center*, Movants also suggest, in passing, that the
     Ninth Circuit has rejected the First Circuit's logic in explaining that adequacy should not be
25   "defin[ed] . . . in terms of what existing parties are going to argue," but instead "in terms of the
     interests of the [Movants] in the subject matter of the litigation." ECF 35-1 at 12 (quoting *United*
26   *States v. Oregon*, 839 F.2d 635, 638 (9th Cir. 1988)). But the core problem with Movants'
     constitutional argument as a justification for intervention is not that the Defendant will not make it. It
27   is that the Defendant, and any intervenor, *could not* and *should not* make it. *See Victim Rts. L. Ctr*,
     988 F.3d at 562-63; *supra* pages 13-14.
28

*Proponents*, 587 F.3d 947, 949 (9th Cir. 2009) (finding that movant effectively had "identical interests" to existing parties where they shared an "ultimate bottom line": "uphold[ing]" challenged legislation); *see also Pennsylvania v. President U.S.*, 888 F.3d 52, 62 (3d Cir. 2018) (permitting intervention based on mismatch between government and movant's objectives within the litigation). The Ninth Circuit's decision in *Arakaki v. Cayetano* illustrates that principle. There, a group of native Hawaiians (collectively "Hoohuli") sought to intervene in a lawsuit challenging the provision of benefits by Hawaiian state agencies. *Arakaki*, 324 F.3d at 1081. Undoubtedly, the Hoohuli, as recipients of the benefits, had different motivations than the state defendants, the providers of the benefits. But the Ninth Circuit concluded that, because the defendants shared the goal of defending the state's actions, and were ready and able to make all relevant arguments, they adequately represented the Hoohuli. *Id.* at 1086-88.

Movants admit that both they and the Defendant seek to defend the 2020 Regulations. ECF 35-1 at 11 (noting the Department's "immediate interest in defending the rule"). To the extent the Movants pursue an additional objective—hamstringing future agency action—that is well outside the scope of this case. *See supra* pages 12-14. And Movants do not explain how their exclusive concern for free speech protection will, practically, lead to different strategic decisions given that no party can defend the 2020 Regulations on grounds not advanced by the Department during its rulemaking. *See supra* pages 12-14. That distinguishes this case from *Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972), where the applicant urged additional grounds for the court to reach the existing party's shared objective, *id.* at 529-30, and also sought unique injunctive relief beyond that requested by the plaintiff, *id.* at 530 & n.3. There, intervention could give rise to different "approach[es] to the conduct of the litigation." *Id.* at 539. But there is no way for Movants' preferred constitutional arguments to come into play as the Court adjudicates this APA challenge, and thus no reason to find the Defendant's existing representation inadequate.

*Californians for Safe and Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184 (9th Cir. 1998), is similarly inapposite. There, a union-intervenor provided specific reasons to think the mismatch between the scope of its interest and the state defendants' would result— and indeed already had resulted—in meaningfully different litigation positions that rendered the existing parties' representation inadequate. Br. for Appellee, *Californians for Safe & Competitive Dump Truck Transp.*, 1997 WL 33551014 at *41 (9th Cir. Oct. 6, 1997). Because the only additional "point of view" Movants bring falls outside the scope of this litigation, they fail to overcome the presumption of adequate representation.

**D.    Movants' Interests Will Not Be Impaired in the Absence of Intervention**

Movants are also not entitled to mandatory intervention because they will have many other opportunities to protect their asserted interests. *See, e.g.*, *Alisal*, 370 F.3d at 918 (holding that applicant had protectable interest but could protect that interest through separate avenues); *United States v. City of Los Angeles*, 288 F.3d at 402 (same). Most obviously, if the Department initiates rulemaking related to the challenged provisions, Movants will be able to make their views known in the notice and comment period. 5 U.S.C. § 553(c). They can, in that forum, share their view that any definition of sexual harassment broader than the one the Department adopted in the 2020 Regulations would run afoul of the Constitution. *See* ECF 35-1 at 2. If the Department nonetheless adopted a view contrary to Movants' policy preferences, the organizations could file their own APA or constitutional challenge, so long as they can establish standing. 5 U.S.C. § 706. Movants may also collaterally attack the Defendant's future actions by suing a university, should one take disciplinary action against a student in a manner Movants believe is unconstitutional and compelled by the Defendant. *See New York*, No. 20-CV-4260 (JGK), 2020 WL 3962110, at *3 (explaining alternative avenues by which Movants could advance their argument about the alleged

1    unconstitutionality of Defendant's former policies). In short, if Movants wish to challenge future

2    action the Department might take, they will have plenty of chances to do so. But not here.

3            Movants are wrong to suggest the "potential stare decisis effects" of the Court's ruling will

4    impair their ability to stop the Department from adopting a different definition of sexual

5    harassment in the future. ECF 35-1 at 7-8. As explained above, the Court is not called, in this case,

6    to judge any sexual harassment definitions other than the one contained in the 2020 Regulations.

7    *See supra* pages 13-14. The Court's decision, then, will in no way foreclose Movants from arguing,

8    in the future, that any broader definition the Department might adopt is unconstitutional. *New York*,

9    No. 20-CV-4260 (JGK), 2020 WL 3962110, at *3 ("Because the issue of what rules the

10   Constitution requires is not an issue the Court needs to reach to resolve the claims in the Complaint

11   . . . the movant's interest will not be 'adversely affected . . . by principles of stare decisis, arising

12   out of the final judgment to be entered in this case.'"). To be sure, Movants might like for the

13   Court to proclaim unnecessarily on the alleged unconstitutionality of other potential definitions,

14   and so provide dicta useful for potential future litigation over potential future agency action. But

15   their interests will not be impaired, in either the colloquial or technical sense of the word, if the

16   Court does not do so—a far cry from the sort of injury-by-precedent that can justify intervention.

17   *See Greene*, 996 F.2d at 977 (finding that *stare decisis* concerns only come into play where the

18   "precedential impact" will "clear[ly]" and "directly" affect "subsequent relief sought by the

19   [applicant]"); *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007) (noting state's interest in

20   protecting its lands and resultant proceeds might be impeded if a precedential opinion established

21   a right of action to challenge the use of those proceeds).

22                                              ***

23            For the above reasons, Movants are not entitled to intervention as of right.

## II.    The Court Should Deny Movants Permissive Intervention

Movants also fail to meet the requirements for permissive intervention. Under Federal Rule of Civil Procedure 24(b)(1)(B), a court may exercise discretion to grant permissive intervention to an applicant that "shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Perry*, 587 F.3d at 955. Even if an applicant meets the threshold jurisdictional, timeliness, and commonality requirements, a district court nonetheless retains broad discretion to deny permissive intervention. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). In exercising that discretion, courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Court may also consider factors—sometimes known as "*Spangler* factors" after an influential case— including "the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case . . . , [and] whether the intervenors' interests are adequately represented by other parties." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

### A.    Movants' Alleged Interests are Too Speculative and Attenuated from WSU's Claims

As with mandatory intervention, permissive intervention is not appropriate where, as here, the movant's interests are "nonexistent, contingent on future events, or tangential to th[e] proceeding." *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, No. 5:09-CV-02502 EJD, 2012 WL 4717814, at *6 (N.D. Cal. Sept. 28, 2012), *aff'd*, 534 F. App'x 665 (9th Cir. 2013). In such a circumstance, the applicant's defense and the main action lack a common question of law or fact—a threshold requirement for permissive intervention. *See id.*; *see also Med. Advocates for Healthy Air v. EPA*, No. CV 11-3515 SI, 2011 WL 4834464, at *5 (N.D. Cal. Oct. 12, 2011)

(holding applicant failed to make threshold showing for permissive intervention because its alleged interests were speculative and too attenuated from plaintiff's case). The discretionary *Spangler* factors also weigh against granting intervention when a movant's interests are so speculative and attenuated from the plaintiff's action. *See Spangler*, 552 F.2d at 1329 (noting court may consider "the nature and extent of the intervenors' interest" and their positions' "probable relation to the merits of the case").

As described above, Movants' alleged interests in this litigation are highly speculative with no established connection to WSU's claims. *Supra* pages 3-9. Movants clearly like the 2020 Regulations and would prefer the Department not deviate from those in the future. But they have not established that WSU's success would affect them in any concrete, non-speculative way. As such, Movants cannot establish the requisite common question of law or fact related to the specific claims at issue in this case, and the *Spangler* factors discourage permissive intervention as well.

### B.    Movants Have Not Overcome the Presumption that the Defendant Will Represent its Interests

As with intervention as of right, "the adequacy of representation alone is a sufficient ground to deny permissive intervention." *Carroll v. Wells Fargo & Co.*, No. 15-CV-02321-EMC, 2016 WL 3951650, at *1 (N.D. Cal. July 22, 2016) (Chen, J.); *see also Spangler*, 552 F.2d at 1329 (noting court may consider "whether the intervenors' interests are adequately represented by other parties"). For the reasons explained above, Movants have failed to overcome the presumptions that the Defendant will adequately represent their putative interests. *See supra* pages 11-19.

### C.    Movants' Intervention Will Cause Undue Delay and Prejudice

Just as important here is a concern that uniquely dominates consideration of permissive intervention: potential "undu[e] delay or prejudice [of] the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Intervention will cause such an effect if it will insert into the case

"extraneous legal and factual issues that [the plaintiff's] lawsuit would not otherwise invoke." *Apple Inc. v. Iancu*, No. 5:20-CV-06128-EJD, 2021 WL 411157, at \*5 (N.D. Cal. Feb. 5, 2021) (quoting *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 414 (N.D. Cal. 2004)). "Such allegations would divert time and resources from the principal thrust of [the plaintiff's] lawsuit and entangle the legal and factual issues involved therein within a web that is not of the original parties' making." *Id.*; *see also Sierra Club v. EPA*, No. 13-CV-2809-YGR, 2013 WL 5568253, at \*5 (N.D. Cal. Oct. 9, 2013) (denying permissive intervention because applicant's claims were "not at issue in th[e] litigation" and "opening the door to . . . additional contentions would only serve to confuse the matters at issue in the complaint").

Movants' intervention would have exactly this effect. As discussed above, Movants seek intervention to make arguments that are well outside the scope of WSU's suit. *See supra* pages 12-14. These arguments cannot, as a matter of administrative law, influence the Court's adjudication of this APA challenge one way or the other. *See supra* pages 13-14. Movants' participation would thus serve as a pure distraction, furthering neither the Court's ability to adjudicate this case nor Movants' purported interests in this litigation. *See Perry*, 587 F.3d at 956 (weighing the "value added" by an applicant in assessing permissive intervention). For that reason, the Court should deny permissive intervention. *Cf. Apple Inc.*, No. 5:20-CV-06128-EJD, 2021 WL 411157, at \*6 (denying permissive intervention because it "[ran] the risk of transforming th[e] case from one assessing . . . a single discretionary agency rule to one evaluating an effort to compel rulemaking").

## III.   If the Court Grants Some Form of Intervention, It Should Limit Movants to Defending the Existing Definition of Sexual Harassment

For the reasons explained above, the Court should not grant Movants either mandatory or permissive intervention. If the Court nonetheless decides to do so, it should grant Movants intervention only with respect to the definition of sexual harassment—the one part of WSU's claim

that Movants address in their briefing. (Movants mention, in passing, arguments they would like to make about what disciplinary procedures the Constitution requires, ECF 35-1 at 11, but WSU does not challenge any of the 2020 Regulations' procedural requirements.) Movants have not attempted to provide any reasoning as to why they should be permitted to intervene to defend the three other challenged portions of the 2020 Regulations. As a result, they should not be allowed to do so.

## CONCLUSION

For the above reasons, WSU respectfully asks the Court to deny Movants' motion to intervene.

Date: June 14, 2021                                   Respectfully submitted,


Seth M. Galanter*                          Adele P. Kimmel (CA Bar No. 126843)
National Center for Youth Law              Alexandra Z. Brodsky*
712 H Street NE, Suite 32020               Public Justice
Washington, DC 20002                       1620 L Street NW, Suite 630
Ph: (202) 868-4781                         Washington, DC 20036
Fax: (510) 835-8099                        Ph: (202) 797-8600
Email: sgalanter@youthlaw.org              Fax: (202) 232-7203
                                           Email: akimmel@publicjustice.net
                                                  abrodsky@publicjustice.net


 */s/ Lauren A. Khouri*
Linda M. Correia*                          John C. He (CA Bar No. 328382)
Lauren A. Khouri*                          Public Justice
Correia & Puth, PLLC                       475 14th Street, Suite 610
1400 16th Street NW, Suite 450             Oakland, CA 94612
Washington DC 20036                        Ph: (510) 622-8150
Ph: (202) 602-6500                         Fax: (202) 232-7203
Fax: (202) 602-6501                        Email: jhe@publicjustice.net
Email: lcorreia@correiaputh.com
       lkhouri@correiaputh.com             * admitted pro hac vice

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2021, a true and accurate copy of the foregoing was electronically filed with the Clerk of Court using the Court's CM/ECF system, which will send a notification of the filing to counsel in this case.

*/s/ Lauren A. Khouri*